MARY LAWLER *vs.* JOHN P. MURPHY AND OTHERS.

Hartford Dist., Oct. T., 1889. ANDREWS, C. J., CARPENTER, PARDEE, LOOMIS and SEYMOUR, Js.

The defendants, as president, secretary and treasurer of an assessment life insurance company, signed and issued to the plaintiff's husband, who became a member of the company, a certificate that the company would on his death, in sixty days after proof, pay the plaintiff "a sum received from a death assessment, but not to exceed $1,000." Certain rules were appended to the certificate and made a part of the contract, which provided that each member should pay one dollar as an initiation fee and on the death of any member "an additional assessment of whatever the directory should deem necessary." Held to involve an im-

plied agreement to make the necessary assessment to meet the death claim promised to be paid.

The plaintiff's complaint set out the contract in full and alleged as a breach of it that the assessment had never been made. Held to be sufficient under chapter 3, section 5, of the Rules under the Practice Act, without an allegation of a promise to make the assessment.

By the contract set out it appeared that the defendants signed it respectively as president, secretary and treasurer of the insurance company. Held, on a demurrer to the complaint, that it did not appear as matter of law that the defendants were not personally liable, as the company might be only an unincorporated association, acting under an associate name.

The plaintiff could maintain an action at law for a breach of the implied agreement to make the assessment.

And the rule of damages would be the maximum sum, in the absence of proof on the part of the defendants that they had made an assessment and had failed to collect that sum.

[Argued November 15th—decided December 30th, 1889.]

ACTION upon a certificate of assessment life insurance; brought to the Superior Court in Hartford County. The complaint was substantially as follows:

1. On the 12th day of July, 1886, the defendants were, and ever since have been, and still are, jointly engaged in carrying on a life insurance business, which was and still is carried on by them under the name of "Connecticut State Insurance Fund of the Ancient Order of Hibernians of the State of Connecticut," which name was and still is frequently used in the abbreviated forms, "A. O. H. Insurance Fund," and "A. O. H. State Insurance Fund."

2. On said 12th day of July, 1886, the defendants, in consideration of the payment by one Thomas Lawler, then in full life but since deceased, "of one dollar initiation fee, and assessments levied from time to time by the directory," and the agreement on the part of the said Lawler to accept the conditions and rules specified in the agreement hereinafter described, entered into a written agreement with said Thomas Lawler; a copy of which is hereunto annexed, wherein, among other things, the defendants agreed to pay to the plaintiff, if living, in sixty days after due proof of the death of said Lawler, the sum of one thousand dollars.

3. The plaintiff was then the wife of said Lawler, and had an insurable interest in his life.

4. On said 12th day of July, 1886, the said Lawler paid to the defendants the sum of one dollar initiation fee, so called, and thereafter, during the remainder of his life, paid eight assessments of one dollar each, levied from time to time by the defendants through a directory, so called.

5. Said eight assessments so paid by the said Lawler were all of the assessments levied from time to time by the defendants, or said directory, during the remainder of his life.

6. On the 2d day of January, 1888, said Lawler died, which death did not occur "in or in consequence of a duel, or by the hands of justice, or in the violation of, or attempt to violate, any criminal law of the United States, or of any state or country."

7. Said Lawler duly kept and fulfilled all of the conditions and rules of said agreement of insurance on his part.

8. The plaintiff duly fulfilled all the conditions of said agreement of insurance on her part, and on the 1st day of January, 1888, made due proof of death, according to the requirements of the policy.

9. On said 2d day of January, 1888, there were, and at all times since have been, and still are, one thousand persons who were liable by the rules of, and under agreements with, the defendants, to pay a death assessment of one dollar each to the defendants, to enable, and which would have enabled, the defendants to meet and discharge their agreement with the plaintiff as above stated.

10. Said assessment has never been made by the defendants, and the amount of said insurance has never been paid to the plaintiff. The plaintiff claims $1,200 damages.

The certificate, which, with certain conditions and rules appended to it, was attached to the complaint, is set out in full, with the conditions and rules, in the opinion. The important part of the certificate was that the "Connecticut State Insurance Fund of the Ancient Order of Hibernians," in consideration of one dollar initiation fee paid by Thomas Lawler, and of assessments to be levied from time to time

by the directory, and of his agreement to accept the conditions and rules annexed to the certificate as a part of the contract, constituted the said Lawler a benefit member of the Insurance Fund, and agreed to pay to Mary Lawler, his wife, if then living, if not, to his heirs at law, in sixty days after due proof of his death, "a sum received from a death assessment, but not to exceed one thousand dollars." The principal among the rules were the first, which provided that each member should pay one dollar at the time the contract of insurance was made, and the second, which provided that on the death of any member the other members should pay to the secretary, if required, an additional assessment of whatever the directory should deem necessary. The certificate was signed by one of the defendants as president of the Insurance Fund, by another as its secretary, and by a third as its treasurer.

The defendant demurred to the complaint, assigning the following grounds of demurrer:—

1. It appears from the written contract declared on that the defendants made no contract upon which they were personally liable, but that said contract was signed by them only as officers of the organization mentioned therein.

2. It appears by said contract that the only agreement made therein was to pay such sum as might be received from a death assessment, and it is not alleged in the complaint that any such sum was ever received.

3. The only breach of said contract alleged in the complaint is that the defendants did not make an assessment, whereas there is no provision in said contract that the defendants or any of them should make any such assessment.

4. Said complaint in its second paragraph alleges that by said contract the death assessment was to be made by the defendants, whereas it appears in said contract that death assessments were to be made by the directory of said association, and it is not alleged that the defendants are members of said directory.

The court (*F. B. Hall, J.*,) sustained the second ground

of demurrer, and rendered judgment for the defendants. The plaintiff appealed.

*C. E. Gross*, for the appellant.

1. We contend that this is an agreement to pay $1,000 unless the defendants shall within the sixty days make a death assessment and fail to receive therefrom that sum, in which case the agreement is to pay only the amount so received. That this is the proper construction appears from the following facts :—(1st.) Nowhere in the policy do the defendants agree to make any assessment to pay a death claim.— (2d.) The fourth condition shows that the death claim is to be paid by the defendants in sixty days, irrespective of the receipt by them of the assessments.—(3d.) The second rule shows that a death claim is not necessarily paid from an assessment made to meet that particular claim, for the members are to pay death assessments only " if required."— (4th.) The third and fourth rules show that a fund is received from other sources besides death assessments, that is, annual assessments and assessment arrearages. And this shows the reason why death assessments are to be made only "if required." "That no assessment was made with reference to this case is some evidence that none was necessary." *Freeman* v. *Nat. Benefit So.*, 42 Hun, 257. See also *Bailey* v. *Mut. Benefit Asso.*, 71 Iowa, 689, 692. Any other construction than this would permit these defendants to perpetrate a fraud. As there is no agreement to make an assessment, none can be compelled. The third rule does not provide for an assessment. This rule only provides for the notice that shall be given of assessments, so as to protect the members from forfeitures for non-payment of assessments. If the defendants' claim in this case is correct, then no death claim can be collected through or enforced by the courts, for the defendants have only to neglect to make an assessment. The authorities are all in favor of our construction of the contract. Niblack on Mut. Benefit Societies, § 405; *Freeman* v. *Nat. Benefit So.*, 42 Hun, 252, 254, 257; *O'Brien* v. *Home Benefit So.*, 51 id., 495, 499; *Peck* v.

*Equitable Accident Asso.*, 52 id., 255; *Kansas Protective Union* v. *Whitt*, 36 Kansas, 764; *Hankinson* v. *Page*, 31 Fed. Rep., 184.

2. An averment of demand for an assessment is not necessary. "It is not necessary, in order to lay the foundation of a recovery, that the plaintiff shall make, or aver that he has made, a demand upon the society for an assessment upon its members to pay the death loss." Niblack on Mut. Ben. Societies, § 396. "The furnishing of satisfactory proof of the death of the member of the society, according to the provisions of the certificate issued to him, should be held to be a demand for payment, and impliedly would also be a demand upon the company to procure the necessary fund by assessment if need be." *Freeman* v. *Nat. Benefit So.*, 42 Hun, 255. See also *Kansas Protective Union* v. *Whitt*, 36 Kansas, 760; *Smith* v. *Covenant Mut. Benefit Asso.*, 24 Fed. Rep., 685.

3. The argument thus far is made upon our interpretation of the contract, to the effect that there is no agreement contained therein that the defendants will make an assessment. Even if we are mistaken in this, the court erred in dismissing the complaint. When the contract provides that *an assessment shall be levied* and the proceeds thereof, *not exceeding a certain sum named*, shall be paid to the beneficiary, it has been held that the insurers are *primâ facie* bound to pay the maximum amount named, and the burden of proof is on them to show that a less amount has been or could only have been collected. *Elkhart Mut. Aid Asso.* v. *Houghton*, 103 Ind., 286; *Lueder's Exrs.* v. *Hartford Life & Annuity Ins. Co.*, 12 Fed. Rep., 465; *Kansas Protective Union* v. *Whitt*, 36 Kansas, 760; *Suppiger* v. *Covenant Mut. Ben. Asso.*, 20 Ill. App., 595; *Covenant Mut. Benefit Asso.* v. *Hoffman*, 110 Ill., 606. In other cases the courts hold that the plaintiff can prove the amount that an assessment, if it had been made in good faith upon the members, would have brought in, and that such an amount can be recovered at law. *Ball* v. *Granite State Mut. Aid Asso.*, 64 N. Hamp., 291; *Hankinson* v. *Page*, 31 Fed. Rep., 184; *Curtis* v. *Mut. Benefit Life Co.*, 48 Conn.,

98.   Some earlier cases hold that where the promise is to levy an assessment and pay the amount received, not exceeding an amount named, if the insurers neglect or refuse to lay an assessment resort must be had to a chancery court to compel an assessment before a recovery can be had at law. *Smith* v. *Covenant Mut. Ben. Asso.*, 24 Fed. Rep., 685; *Bailey* v. *Mut. Ben. Asso.*, 71 Iowa, 689; *Newman* v. *Covenant Mut. Ben. Asso.*, 72 Iowa, 242. The better opinion seems, to-day, to be opposed to these decisions. Niblack on Mut. Ben. Societies, §§ 408, 409; *Hankinson* v. *Page*, 31 Fed. Rep., 184; *Taylor* v. *National Temp. Relief Union*, 94 Mo., 35; *Earnshaw* v. *Sun Mut. Aid So.*, 68 Md., 465. All the cases cited above which deny substantial damages in case an assessment is promised but not made, hold that the plaintiff is entitled to nominal damages in an action at law, where the fact appears that the assessment has not been made.

4. The defendants are liable as individuals. It does not affect the case that they did not intend to incur a personal liability. *Davison* v. *Holden*, 55 Conn., 113. "It is not necessary that the person incurring the debt for the benefit of an unincorporated society should know at the time that he is incurring a personal liability or indebtedness; nor does it alter the question that he, at the time, contracted as an officer of the society." Niblack on Mut. Ben. Societies, § 105. See also *Fredenhall* v. *Taylor*, 26 Wis., 286; *Blakely* v. *Bennecke*, 59 Mo. 193.

*C. E. Perkins* and *A. Perkins*, for the appellees.

1. Our first ground of demurrer is in substance that the action is brought against the three defendants personally, whereas it appears by the contract that they did not intend to bind themselves personally, but only as officers of some organization which in fact made the contract. This objection may be taken by demurrer where the contract declared on is made a part of the complaint. *Hitchcock* v. *Buchanan*, 105 U. S. R., 416. The contract does not purport to bind the defendants personally. The complaint alleges that *these defendants* entered into the agreement with Lawler, whereby

the *defendants* agreed to pay a sum received from a death assessment, etc. Now this agreement appears to be signed by these three defendants solely as *officers*, namely, president, secretary, and treasurer, and not as individuals, and it comes exactly within the decision above mentioned. There a suit was brought against two defendants personally, as drawers of a bill of exchange, which was set out in the complaint, and which was signed by them only as president and secretary, and the court held on demurrer that the defendants could not be made liable personally on a written instrument signed by them only in the capacity of officers of some organization. So in the case at bar, the written contract controls the allegations, and if from the whole complaint it appears that the agreement was not intended to bind the defendants personally, the complaint is demurrable. The rule is well settled in this state since *Hewitt* v. *Wheeler*, 22 Conn., 557, that the court is to look at the whole agreement to see whether the parties intended to be personally bound. It is claimed that, under the decision in *Davison* v. *Holden*, 55 Conn., 103, the defendants became liable as members of an association, all the members of which were liable, and that if there were others not sued that fact should have been pleaded in abatement. But this case is clearly distinguishable from that. There no written contract was sued on; the action was brought for goods furnished to a trading association by an outsider, and the court held that, the defendants being members of the association, the goods were in law furnished to them. Here, however, the insured was one of a number of persons who merely agreed to pay certain assessments in case one of them died; no one of them agreed or expected to pay the whole sum mentioned in the contract, nor was it expected that any one would do so ; in fact, there was no contract to pay any definite sum, only such amount of assessments as should be collected. These defendants certainly did not intend to become personally liable to pay the sum named in the certificate, or any sum whatever beyond the amount of their assessments, if they happened to be some of those who were insured. We submit that on the

face of the paper itself it appears that they did not intend to bind themselves personally.

2. The considerations arising under the other grounds of demurrer strongly confirm this view. The second paragraph of the complaint alleges that by said agreement *the defendants* agreed to pay a sum received from a death assessment " *to be made by them;* " and this is the real ground of claim upon which the complaint is based, and to which the remaining grounds of demurrer are directed. The plaintiff's theory seems to be that these defendants either personally, or in common with other members, made a contract with the plaintiff that *they* would, upon the death of Lawler, make an assessment upon all the members sufficient to pay her a thousand dollars. Upon an examination of the contract it will appear that all that is agreed is that *whatever shall be received from an assessment* shall be paid to her; and that is all. Until some sum is so received there can be no breach of that agreement. This is so clear that the plaintiff to make out any case is obliged to add something not found in the contract. She says that the agreement was to pay a sum received from an assessment " to be made by them," that is, by these defendants. Now there is not a word in the policy binding these defendants, or the association itself, to make an assessment, nor was it intended that there should be. On the contrary, it is expressly stated that the assessments are to be " levied from time to time *by the directory.*" The second rule also, which is made a part of the contract, provides for the payment of assessments of " whatever *the directory* shall deem necessary." It is nowhere alleged that any sum has ever been received from an assessment which the defendants or the association failed to pay over; the only breach of the contract alleged is that the defendants had not made an assessment, and as the contract shows that not only they did not agree to, but that if any assessment was to be made it was to be made by some one else, no ground of action is shown against these defendants. This instrument is entirely different from a common insurance policy, where a corporation in consideration of annual payments agrees to pay a

definite amount upon the death of the insured, and also from what is called assessment insurance, where a corporation agrees to make assessments to pay a death claim. It appears to be a mutual agreement among certain members of a benevolent society to pay certain sums upon the death of one of their number, or if they fail to pay them to forfeit what they have already paid in. The third rule provides that if any one fails to pay his assessment his contract with the fund shall "lapse and be void." The contract itself having terminated, no liability under it remains. As it would be impracticable for each person insured to contract directly with all the others, they formed an association with certain officers to act for them, namely, a president, secretary and treasurer, and a body called "the directory," who were to make such assessments as they should deem necessary; and when such assessments were actually made, whatever was received by the treasurer was to be paid upon a death claim. It was not contemplated that there should be any capital or fund from which such claims should be paid as they became due, without regard to the amount of assessments actually received, and still less that the persons who signed the certificate should become *personally* liable to pay. The whole frame of the instrument shows that no person was to become liable to pay anything more than an assessment, nor could any insured expect to receive anything more than the amount which was actually received from that source, after the directory had ordered one to be made.

3. The theory of the plaintiff with regard to the assessments seems to be that the legal effect of this instrument was an agreement by these defendants, either alone or in common with others, that upon the death of Lawler *they* would make an assessment, and pay the amount received to the plaintiff. She alleges that the assessment was to be "made by them," that is, by the defendants. But in speaking of the assessments paid by Lawler, she alleges that they were made by the defendants *or* by the directory. And she alleges that "said assessment has never been made by the defendants," but does not allege that it has not been made at all, or by

the directory. The instrument nowhere contains any agree-ment that these three defendants, either personally or as officers, were to make the assessment. On the contrary, it distinctly states that they are to be made " by the directory." It is nowhere alleged in the complaint that these defendants, or any of them, were members of the directory, or that they had anything to do with making assessments; so that if a failure to make assessments is the ground of the action it cannot be sustained as against them. And it is settled by several cases that upon such an agreement as this no action lies against any one for the amount of the insurance, but the remedy is in equity to oblige the proper persons to make an assessment and pay it over. The case of *Smith* v. *Cove-nant Mut. Ben. Asso.*, 24 Fed. Rep., 685, is exactly in point. In that case the certificate provided that upon the death of the insured member the association should make an assess-ment upon the other members, and that the sum so collected should be paid to his heirs or devisees. The plaintiff brought an action at law claiming to recover the full sum named in the instrument, and the defendant demurred on the same grounds as in the present case. The court held that when no assessment had been made, and no moneys received, no action at law would lie, and that the remedy was in equity to cause an assessment to be made. This case was decided in 1885 by Judges DYER and HARLAN, and was an action against a corporation, where there was an ex-press agreement to make an assessment. The only case to the contrary is *Lueder's Exrs.* v. *Hartford Life & Annuity Ins Co.*, 12 Fed. Rep., 465, (*S. C.*, 4 McCrary, 149,) decided in 1882 by Judge TREAT; but that decision was explained away by Judge McCRARY in *Eggleston* v. *Centennial Mut. Life Asso.*, 19 Fed. Rep., 201. And in *Burdon* v. *Mass. Safety Fund Asso.*, 147 Mass., 360, decided in 1888, the Su-preme Court of Massachusetts says:—" Such is the plain language of the contract, and such is the construction which has been given to similar contracts in all the cases but one that have been brought to our attention. The single excep-tion is in *Lueder's Exrs.* v. *Hartford Life & Annuity Ins.*

*Co.*, 4 McCrary, 149; but the decision of the district judge in that case is overruled or overborne by other decisions." See also *U. S. Mut. Acc. Asso.* v. *Barry*, 131 U. S. R., 100; *Bailey* v. *Mut. Ben. Asso.*, 71 Iowa, 689; *Newman* v. *Covenant Mut. Ben. Asso.*, 72 Iowa, 242. In the last case, in which the agreement was similar to ours, the court says: " The extent of the defendant's obligation is fixed by the certificate of membership. The association does not agree to pay any sum from a general fund, nor does it provide any general fund. It merely agrees to levy an assessment and pay over such sums as may be collected upon it, less expenses. If the company, doubting or denying its liability in a given case, refused to levy an assessment, the contract is not thereby changed and the company's liability extended. It may be conceded that a wrongful refusal would be a breach of the contract. But we are unable to see how more than nominal damages could be recovered for such a breach." The reasons urged by the court in this case, it seems to us, dispose of the claims of the plaintiff so thoroughly and clearly that it is unnecessary for us to consider them more at length. These considerations cover all the grounds of demurrer, and we submit that the defendants are not personally responsible upon this certificate ; and that if they are an action at law could not be maintained to recover either the sum named in the policy or the amount which might possibly be collected on an assessment.

SEYMOUR, J. This is an appeal from the judgment of the Superior Court sustaining the defendants' demurrer. The cause of demurrer upon which the issue was found for the defendant alleges that it appears from the contract for a breach of which the suit was brought, that the only agreement made therein was to pay such sum as might be received from a death assessment, and that it is not alleged in the complaint that any such sum was ever received.

To understand the force of this objection and the considerations applicable to it, it is necessary to set out the contract in full. It is as follows :—

VOL. LVIII.—20

" Certificate No. 446.                                    Benefit $1,000.

" Connecticut State Insurance Fund of the Ancient Order of Hibernians of the State of Connecticut.

"In consideration of one dollar, initiation fee, and assessments levied from time to time by the directory, Thomas Lawler, of division No. 2 of Hartford, County of Hartford, State of Connecticut, receipt of which is hereby acknowledged, and the agreement on the part of the said Thomas Lawler to accept the following conditions and rules as a part of this contract between said A. O. H. Insurance Fund and himself, hereby constitutes the said Thomas Lawler a benefit member of said A. O. H. Insurance Fund, and agrees to pay Mary Lawler, wife, if living, if not, to the heirs at law of said member, in sixty days after due proof of the death of said member, a sum received from a death assessment, but not to exceed one thousand dollars.

### " CONDITIONS.

" The conditions upon which this certificate is issued by the Fund and accepted by said member, are the following:—

" *First.* That the statements and declarations made by and on behalf of said member in his application to become a benefit member of said Fund, which are hereby referred to as a basis of this contract, and are a part thereof, and on the faith of which this certificate is issued, are in all respects true, and that no fact has been suppressed relating to his health or circumstances, affecting the interests of said Fund or their inducement to accept the risk.

" *Second.* That the said member must be a member in good standing in the order at the time of his death, otherwise this certificate will be null and void.

" *Third.* Any assignment of this certificate shall be void unless assented to in writing by said Fund.

" *Fourth.* The death claim under this contract shall be payable in sixty days after satisfactory proof of death of said member shall have been furnished at the office of the secretary of the Fund, by the certificate of the attending physician, if there was any, and the full and particular

statement of at least one competent and disinterested member of the order, stating the time, place, cause, and circumstances of the death of the party.

"*Fifth.* No officers of divisions are authorized to make, alter or discharge contracts or waive forfeitures, and any such act, to be valid, must be done in writing and signed by the president and secretary of the directory.

"*Sixth.* This contract shall be void if the party shall die in or in consequence of a duel, or by the hands of justice, or in the violation of or attempt to violate any criminal law of the United States or of any state or county in which he may be.

"*Seventh.* A failure to comply with the rules of said Fund as to payment of assessments, or falling into gross and confirmed habits of intoxication, shall also render the certificate void.

"*Eighth.* This certificate is subject to all rules and regulations that the state convention may, from time to time, adopt for the general advancement and interest of the Fund.

"RULES.

" The rules governing this contract, and which form a part of the same, are as follows:—

"*First.* There shall be paid by the member under this contract to the secretary of the Fund, on the day of the month in which this contract was made, the sum of one dollar, and he shall not be liable for any further sum except as follows:—

"*Second.* Upon the death of any member the said Thomas Lawler shall at once pay, if required, to its secretary, an additional assessment of whatever the directory shall deem necessary.

" *Third.* The form of notice to, and process of collection from, each of the members of the assessment above named, shall be as follows:—A notice shall be sent announcing such assessment, and the number thereof, to the last post-office address given to the secretary of the Fund by each member, and if the assessment is not received within forty days from

the mailing of said notice, it shall be accepted and taken as sufficient evidence that the brother has decided to terminate his connection with the Fund, which connection shall thereupon terminate, and the brother's contract with the Fund shall lapse and be void; but said brother may again renew his connection with the Fund by a new contract, made in the same manner as at first, or for valid reasons to the officers of the Fund, (such as a failure to receive notice of an assessment), he may be reinstated by paying assessment arrearages.

"*Fourth*. The above rule governing the collection of assessments for death-claims shall also apply to the collection of the annual assessment.

"*Fifth*. Each applicant to become such member must sign the Fund's form of application, countersigned by the board of directors of the division of which he is a member.

"In witness whereof the said A. O. H. State Insurance Fund hath, by its president and secretary, signed and delivered this certificate at its office, this 12th day of July, 1886.

"JOHN D. CUNNINGHAM,
                    *Secretary Ins. Fund.*
"P. J. O'CONNOR,
                    *Treasurer Ins. Fund.*
"JOHN P. MURPHY,
                    *President Ins. Fund.*"

Is it true, as claimed by the defendants, and in the sense in which they claim it, that the only agreement contained in the above contract is to pay such sum as might be received from a death assessment? Or, to put it in another form, what does the agreement to pay a sum received from a death assessment imply and involve, when taken in connection with the other provisions of the contract?

The contract is a peculiar one. It is very inartificially drawn, and it is undoubtedly difficult to give it a satisfactory construction. Of course it should be so construed as to make its contemplated benefits available, if it can legally be done. And we are, at least, warranted in assuming that the insur-

ers, in accepting the money of the insured, and the insured in paying it, understood that some duty devolved upon the former to secure the promised benefits of the contract to the latter.

In addition to the agreement to pay to Mary Lawler, if living, if not, to the heirs of Thomas, in sixty days after due proof of his death, a sum received from a death assessment, but not to exceed $1000, the contract further provides that the death claim shall be payable in sixty days after satisfactory proof of such death, except in certain cases not necessary to be stated here, and gives the form of notice and process for collecting the death assessment from each member of the association. Each contract contains, also, a promise by the insured that upon the death of any member he will at once pay, if required, to the secretary, an additional assessment of whatever the directory shall deem necessary—additional as the contract shows to the dollar paid upon becoming a member. This is an agreement by the A. O. H. Insurance Fund to pay the proper person, within sixty days after satisfactory proof of the death of the insured, a sum, not to exceed $1000, received from a death assessment. The contract contains the agreement of members to pay such assessments and specifies the process by which its collection shall be undertaken—" a notice *shall be sent*" announcing such assessment, etc. All of which, taken in connection with the other provisions of the contract and the situation and manifest intention of the parties, seems to us to import a promise to make, or cause to be made, the necessary assessment to meet the death claim promised to be paid.

It is well established that whatever is necessary to be done in order to accomplish work specifically contracted to be performed, is parcel of the contract, though not specified. It is also a principle of general application that whatever may be fairly implied from the terms or language of an instrument, is, in judgment of law, contained in it. *Currier* v. *Boston & Maine R. R. Co.*, 34 N. Hamp., 498; *Rogers* v *Kneeland*, 13 Wend., 114.

Addison, in his work on contracts, sec. 1400, says : " Although the words of a contract under seal do not in themselves import any express covenant, yet the law, in order to promote good faith and make men act up to the spirit as well as to the letter of their engagements, will create and supply, as a necessary result and consequence of the contract, certain covenants and obligations which bind the parties as forcibly and effectually as if they had been expressed in the strongest and most explicit terms in the deed itself."

In *White* v. *Snell*, 5 Pick., 425, an action of assumpsit, the defendant " for value received promised to pay a sum of money if, and when, he should recover his demands against *A.*" It was held competent for the plaintiff to prove that the defendant had no demands against *A*, and that so the promise was absolute, or that he had not used due diligence to collect them.

In *Savage* v. *Whitaker*, 15 Maine, 24, the court says :— " An engagement to do a certain thing involves an undertaking to secure and use effectually all the means necessary to accomplish the object."

MARSHALL, C. J., in *Ogden* v. *Saunders*, 12 Wheat., 341, speaking of the power and policy of the law to supply in contracts what in that case is presumed to have been inadvertently omitted by the parties, says that the parties are supposed to have made those stipulations which as honest, fair and just men they ought to have made.

The contract in *Freeman* v. *National Benefit Society*, 42 Hun, 252, is, in many respects, similar to the one under consideration. Although the stipulation in that case was to pay a sum " *equal* to the amount received from a death assessment, but not to exceed $3000," instead of " a sum *received* from a death assessment," etc., yet the court held that " the provision in the body of the certificate that payment should be made of a sum equal to the amount received from a death assessment, not to exceed the sum specified, in ninety days after due proof of the death of the member was given, implies an obligation upon the company to proceed

and make the necessary assessment to raise the fund within the time during which it was provided that the claim should remain in abeyance."

We conclude then that, in connection with the express promises contained in the contract in this case, there is an implied promise to make an assessment to pay the death claim agreed to be paid; an implied promise which the law, " in order to promote good faith and make the parties act up to the spirit as well as to the letter of their engagements, will create and supply as a necessary result and consequence of their contract." The contract to pay a sum received from a death assessment, taken in connection with the other express provisions, involves, in the language of one of the decisions above quoted, an undertaking to secure and use effectually all the means necessary to accomplish the result, and require that an assessment should be made.

In this view of the case the allegation of the demurrer, that " it appears by said contract that the only agreement made therein was to pay such sum as might be received from a death assessment," is not sustained. There was a further agreement, namely, to make such assessment. The complaint alleges that it was not made nor the amount of insurance paid. This cause of demurrer therefore must fail.

It is true that the complaint does not state, in terms, that the defendants agreed to make an assessment, but it sets out the contract in full and alleges as a breach of it, for which it claims damages, that " said assessment has never been made by the defendants."

This method is sanctioned by the Practice Act and the forms and rules given under it. Rule III., sec. 5, states that it is unnecessary to allege any promise or duty which the law implies from the facts pleaded.

Whatever, therefore, may have been the theory of the plaintiff, inasmuch as the agreement to make the assessment to pay the death claim is implied in the contract, we cannot sustain the demurrer upon this point.

This disposes of the only ground for demurrer specifically decided by the Superior Court. The defendants however

insisted, in the argument before us, that the real question is, whether the suit can be maintained at all against these defendants, that it would be unreasonable not to dispose of the whole matter now and here, and that a demurrer goes back and searches out all the errors in the pleadings. Perhaps, in order to determine whether the plaintiff was injured by the decision of the court sustaining the cause of demurrer already disposed of, we ought to pass upon the other causes assigned, for, if the action cannot, in any event, be sustained against the defendants as individuals, the plaintiff has sustained no injury from the decision that the complaint fails to set forth a cause of action against anybody.

Then too, all the causes for demurrer were argued before us, and the conclusions to which we have come will not make it unjust to the plaintiff to accede to the defendants' claim, that we should decide all the points which were argued.

The defendants assign for further cause for demurrer, that it appears from the contract declared on that the defendants made no personal agreement upon which they were personally liable, but that the contract was signed by them only as officers of the organization mentioned therein. This issue is raised, not as a question of fact, but as a question of law upon the pleadings.

As a matter of law does the contract, upon its face, show that the defendants made no personal contract upon which they were personally liable? The complaint alleges that they were jointly engaged in carrying on a life insurance business under the name of the " Connecticut State Insurance Fund," and that they entered into the contract sued upon. If the facts are so should they not be held liable? Does the contract, as a matter of law, preclude that state of facts? If they had simply been sued as individuals, upon a contract headed with the name of the association and signed by them respectively as president, secretary and treasurer, as appears to have been the case in *Hitchcock* v. *Buchanan*, 105 U. S. R., 416, cited by the defendants, and the complaint had contained no allegation that they were carrying on the insurance business under a certain name and made the con-

tract with Thomas Lawler, the question would be a different one, especially if it appeared that the association was incorporated. But under the decision of *Davison* v. *Holden*, 55 Conn., 103, the defendants certainly might be liable on a contract signed by them as officers of an organization. If, as the statute permits, the organization consisted simply of individuals united under a distinguishing associate name for business purposes, they did not thereby acquire either corporate power or immunity from individual liability; consequently it could not appear, as a matter of law, from the contract declared on, that the defendants made no personal contract or agreement upon which they were personally liable.

The case of *Davison* v. *Holden* was a suit against certain individuals who were, in fact, the president and secretary of an unincorporated association. This court held that "as a matter of law the plaintiff, in giving credit to the associate name, gave credit to the individuals who upon inquiry should be found to stand behind it." It seems clear, without pursuing the subject further, that this cause for demurrer cannot be sustained. Individual members of an unincorporated association are liable for contracts made in the name of the association, without regard to the question whether they so intended or so understood the law, and even if the other party contracted in form with the association and was ignorant of the names of the individual members composing it. And it is also held in the case just cited, that the individual members of such an association do not acquire any immunity from individual liability by force of the statutes which provide that any number of persons associated and known by some distinguishing name may sue and be sued, plead and be impleaded, by such name; and that the individual property of the members shall not be liable to attachment or levy of execution in a suit brought against the association.

The remaining causes assigned for the demurrer are, that the only breach of the contract alleged in the complaint is that the defendants did not make an assessment, whereas there is no provision in the contract that the defendants or any of them should make any such assessment; and that the

complaint alleges that, by the contract, the death assessment was to be made by the defendants, whereas it appears in the contract that death assessments were to be made by the directory of the association, and it is not alleged that the defendants are members of the directory. The conclusion to which we have already come, that the contract implies a promise that the defendants will make, or cause to be made, an assessment to meet death claims, makes further discussion of these causes unnecessary. We do not concur in the assertion therein made, that death assessments were to be made by the directory. Its duty was the subordinate one of ascertaining the amount necessary to be raised by assessment. This the contract undertakes that it shall do, and that an assessment shall thereupon be made by the Insurance Fund.

Two other questions were discussed before us, namely, whether, if it should be held that the contract contains an agreement to make an assessment, the plaintiff's remedy is at law, or whether she must first go into a court of equity to compel the defendants to make the assessment; and, if an action at law can be sustained, what is the rule of damages. As to the first, we think an action at law can be sustained. Neither circuity nor multiplication of actions is favored by our practice. If there is a contract to make an assessment, a breach of which is alleged and damages demanded therefor, and a rule of damages can be provided, why should not an action at law be sustained? Both Niblack and Bacon, recent writers upon the subject of mutual benefit societies, after examining a great number of cases, come to the conclusion, with which we fully agree, that the decided weight of authority is to the effect that an action at law will lie for damages for the breach of a contract to make an assessment.

It makes no difference with the questions raised by the demurrer whether substantial or nominal damages can be recovered, for it ought to have been overruled if the plaintiff is entitled to any damages at all. Still, the rule of damages applicable to the case was thoroughly argued and both parties invited a decision upon it.

Referring again to the contract, the Insurance Fund agrees

to pay to the proper person, in sixty days after due proof of death, a sum received from a death assessment, but not to exceed one thousand dollars. Each member pays one dollar upon joining the association, and agrees, upon the death of any member, to pay at once, if required, an additional assessment of whatever the directory shall deem necessary. Deem necessary for what? Clearly not what it shall deem necessary *to pay*, leaving the amount discretionary with the directory and to be settled in each individual case as it may deem necessary, but what it shall deem it necessary for the association to raise by assessments in order to pay the one thousand dollars. In short, the contract is to be taken as an agreement to make an assessment which, if duly paid, will raise one thousand dollars, or so much thereof as, in addition to funds on hand, will make that sum. The insured takes the risk of the neglect of members to meet their assessments, and of the consequent reduction of the maximum sum named. One thousand dollars is, *primâ facie*, the value of the policy, and the Insurance Fund was bound to take all the steps which it contracted to in order to realize that sum. Cases cited by the plaintiff, and other cases which we have examined, fully sustain this conclusion. And the rule is a fair one, because it is always within the power of the association to live up to its contract, and thus fix the sum which a death assessment will bring.

In *Elkhart Mutual Aid Association* v. *Houghton*, 103 Ind., 286, the certificate entitled the beneficiary to one thousand dollars, or so much thereof as might be realized from one assessment. The complaint alleged the death of the beneficiary, proof of his death duly given, and the refusal of the defendant to pay the amount named in the certificate or any part thereof, and its refusal to order or make any assessment to raise the required sum or any part of it. The defendant was held liable for the maximum amount, it not being shown in defence that an assessment would not produce the full amount of the certificate. It was assumed that it was the duty of the defendant to make an assessment, though the contract contained no express agreement to that effect.

*Earnshaw* v. *Sun Mutual Aid Society*, 68 Md., 467; *Lueder's Exrs.* v. *Hartford Life & Annuity Ins. Co.*, 12 Fed. Reporter, 465; *Kansas Protective Union* v. *Whitt*, 36 Kan., 760; *Covenant Mutual Benefit Association* v. *Hoffman*, 110 Ill., 606; *Suppiger* v. *Covenant Mut. Benefit Asso.*, 20 Ill. App., 595; Niblack on Mutual Benefit Societies, § 410, commenting on *Newman* v. *Covenant Mutual Benefit Asso.*, 72 Iowa, 242.

There is error in the judgment appealed from.

In this opinion the other judges concurred.