THE NEW BLUE SPRINGS MILLING COMPANY v. JEZREEL DEWITT AND JOHN T. FIELDS.

No. 12,755.   (70 Pac. 647.)

SYLLABUS BY THE COURT.

1. PROMISSORY NOTES— *Contemporaneous Agreements.* A commercial indorsement by the payee on a negotiable promissory note and a contemporaneous written agreement limiting the effect of such indorsement are to be construed as parts of one instrument.

2. ———— *Indorser an Improper Party Defendant.* When the payee of a negotiable promissory note transfers it to another under a written contract whereby the holder stipulates to collect the note for the mutual advantage of himself and the payee from the maker, the payee is improperly joined as a defendant in a suit on the note by the holder against the maker, for the reason that the interest of the payee in the controversy is not adverse to the plaintiff.

3. PRACTICE, DISTRICT COURT—*Jurisdiction.* The commencement

of an action against an adventitious defendant in one county, and service of process on him there, will not give the court jurisdiction of the real defendant, who is served with summons in another county.

Error from Wyandotte district court; E. L. Fischer, judge. Opinion filed November 8, 1902. Affirmed.

### STATEMENT.

The New Blue Springs Milling Company, a corporation of the state of Missouri, commenced an action in the district court of Wyandotte county against Jezreel DeWitt and John T. Fields to recover judgment on a promissory note. Both defendants were residents of Osage county. Fields was present in Wyandotte county the day the petition was filed and personal service of summons was at once made on him there. He filed no pleadings and made no appearance in the cause, and, so far as the record discloses, no judgment was asked on his default. Another summons was issued to the sheriff of Osage county for DeWitt, which was there served on him. DeWitt properly attacked the jurisdiction of the court, first by motion and then by answer, and when the case was called for trial moved for a determination of that question in advance of any other proceeding, which course was adopted by the court. The parties waived a jury, and at the conclusion of the hearing the court dismissed the action, with costs. This judgment of the court was based upon the following state of facts, admitted or established at the trial: The instrument sued on was a negotiable promissory note for $10,000, dated at Burlingame, Kan., June 23, 1898, due without interest eighteen months after date, given by DeWitt to Fields, and by the latter transferred to the plaintiff milling com-

,pany.   Upon the back of the note appeared the following indorsement:  "November 10, 1899.—Pay to the order of the New Blue Springs Milling Company. Demand, protest and notice thereof waived.—John T. Fields."   At the time this indorsement was made and the note delivered, a written contract was entered into between the milling company and Fields, as follows:

"This instrument, made this 10th day of November, 1899, by and between the New Blue Springs Milling Company, hereinafter called the first party, and John T. Fields, hereinafter called the second party, witnesseth:

"That said John T. Fields has this day sold, delivered and transferred and indorsed to the first party a certain promissory note dated June 23, 1898, executed by J. DeWitt, due eighteen months after date, for the sum of ten thousand dollars ($10,000), payable to the order of said second party.

"In consideration thereof, the first party agrees to convey, as hereinafter provided, the following-described lands situate in Jackson county, Missouri, to wit:  (Description omitted,) subject to all taxes and park and boulevard assessments and instalments thereof maturing and becoming payable after this date.

"Subject to a deed of trust and encumbrance thereon to Edward E. Holmes, trustee, to secure the sum of $6500, and interest after this date at the rate of six per cent. per annum, payable semiannually, said indebtedness being payable on or before the 1st day of October, 1903, which encumbrance and indebtedness the second party is to assume and agree to pay, together with interest thereon from this date.

"The first party agrees to execute and place in escrow with any bank in Kansas City, Mo., or other person satisfactory to both parties, a good and sufficient warranty deed to said second party, conveying said land subject to the matters aforesaid, together with its demand note for the sum of $1500, payable

to the second party. The said conveyance of said lands and the said sum of $1500 is the consideration for the indorsement of the said $10,000 note to the first party.

"The said conveyance and $1500 note are to remain in escrow until the first party collects the said $10,000 note, which it is to proceed to do upon maturity thereof with all reasonable speed by prompt proceedings therefor, and when collected said $1500 note is to be paid and said deed delivered out of escrow to the second party. In case said first party cannot by legal proceedings collect said $10,000 note, then said deed and demand note for $1500 are to be redelivered to it.

"During the period while said deed is in escrow the possession of said land is to be retained by first party, and the rents collected by it for the use of the second party; said collection of rent to be applied (1st) to the payment of the interest on the encumbrance on said land and taxes thereon, and (2d) the balance, if any, to be held for the use and benefit of the second party.

"Said demand note is to bear no interest.

"The second party hereby waives demand, protest and notice of non-payment of the said $10,000 note.

"The purpose of depositing said deed and $1500 note in escrow is to secure the first party in the collection of said $10,000 note.

"In case said deed and $1500 note are returned from escrow as above, the first party shall continue to hold said lands, collecting rents as aforesaid, and may sell or exchange said land in its discretion to the best advantage obtainable, and may at its option, then to be exercised, without notice, continue to hold said land as security for collection of said $10,000 note, or return said note or judgment and retain said land absolutely.

"Executed in duplicate, this 10th day of November, A. D. 1899.

THE NEW BLUE SPRINGS MILLING CO.
By CLAUDE S. GOSSETT, *President*.
J. T. FIELDS."

The $1500 note and deed referred to in the contract were deposited in escrow as therein stipulated, and after the lapse in time of about a week, by agreement of the parties thereto, the written contract was modified so that at the option of Fields he might, upon the collection of the DeWitt note, call on the milling company for sixty per cent. of the proceeds, or $6000, and the company take the land.

The district court concluded from these facts that the defendant John T. Fields had no real interest in the subject-matter of the action adverse to the milling company, and, hence, that the action was not rightfully brought in Wyandotte county so that summons could issue therefrom for DeWitt to Osage county.

*Alden & McFadden*, and *Cook & Gossett*, for plaintiff in error.

*J. T. Pringle*, and *Silas Porter*, for defendant in error Jezreel DeWitt.

The opinion of the court was delivered by

BURCH, J. :  Plaintiff in error insists that, because it took the DeWitt note under a commercial indorsement in due form, Fields is bound to all the liabilities of an indorser of negotiable paper ; that he became subject to suit at once upon default of the maker, and that, being subject to such suit, he was a real party adverse in interest to the plaintiff.   This contention, however, omits all consideration of the principal contract in writing executed contemporaneously with that written on the back of the note.   It is elementary law that parties may, if they so desire, express their full intention in separate instruments, and in this case it was proper for them to limit the effect of the indorsement by a separate agreement, if they saw fit so to do.

In *Davis v. Brown*, 94 U. S. 423, 24 L. Ed. 204, an indorser of a promissory note sought to prove an agreement in writing made with its holder at the time of the indorsement that he should not be held liable thereon, and the court said :

"The objection that the agreement was inadmissible because it tended to vary and destroy the legal effect of the indorsement is not tenable. The agreement, being in writing, is to be taken and considered in connection with the indorsement, and the two are to be construed together. So far as the bank was concerned, the agreement made the indorsement equivalent to one without recourse to the indorsers."

It is necessary to determine, therefore, whether the agreement relating to the purposes of the transfer of the note qualified the agreement embodied in the indorsement ; and in arriving at a solution of this question, according to incontrovertible precedents, whatever may be fairly implied from the language of the writings employed is, in the judgment of the law, contained in them. (*Lawler v. Murphy*, 58 Conn. 294, 20 Atl. 457, 8 L. R. A. 113, and cases cited. It is only by the light of this rule that the full purport of the indorsement on the note can be apprehended. (*Doolittle v. Ferry*, 20 Kan. 230, 27 Am. Rep. 166.) It is not any the less applicable in searching for the true intent of a companion instrument. The obligation of the indorsement was that the maker of the note would pay at maturity, and if he defaulted that Fields should then pay.

In Daniel on Negotiable Instruments, volume 1, section 671, the rule is stated as follows :

"The indorser of a bill contracts to pay it at maturity, if, on presentment for acceptance, it is not accepted according to its purport, and he is duly notified of the dishonor. And the indorser of an ac-

cepted bill, or of a note, likewise contracts to pay it, if it be not duly paid by the acceptor or maker. It matters not what may be the cause of the drawer's or maker's refusal. The indorser contracts to pay on being duly notified that he refuses to pay. He therefore warrants the solvency of the parties—or, in short, warrants that it will be paid, either by them or by himself, on receiving notice of their failure.''

In Story on Promissory Notes, section 135, it is said :

''The indorsement of a note, in contemplation of law, amounts to a contract on the part of the indorser with and in favor of the indorsee and every subsequent holder to whom the note is transferred :   .   .   .   (4) That the maker is competent to bind himself to the payment, and will, upon due presentment of the note, pay it at maturity, or when it is due.   (5) That if, when duly presented, it is not paid by the maker, he, the indorser, will, upon due and reasonable notice given him of the dishonor, pay the same to the indorsee or other holder.''   (See, also, 2 Rand. Com. Pap. § 742; Wood's Byles, Bills and N. *154; Chit. Bills, *241.)

The note fell due December 23, 1899. The indorsement was made November 10 of the same year. Under the indorsement alone, it would be contemplated that in little more than a month after the paper changed hands DeWitt should pay $10,000, and that, upon his failure so to do, Fields would pay that sum to the plaintiff. Under the principal contract, nothing of the kind was either expected or required. The milling company was to collect the note ; it was to proceed to collect it upon its maturity ; it was to do this with all reasonable speed ; it was to institute prompt proceedings therefor. The proceedings in view were legal proceedings, and, under the last clause of the contract, these legal proceedings were to result in a judgment. In all this the milling company was to be the moving

party to enforce and compel payment, and was not to be the simple recipient of funds due to it. Apparently, nothing but the dishonor of the note was considered. It was not supposed that it would be paid according to its tenor at maturity, but it was to be collected by compulsory measures.

If Fields should pay under the indorsement, the provisions relating to collection by prompt legal proceedings on maturity of the paper would be nugatory, although they appear to be among the most essential provisions of the contract. The milling company would then no longer have a cause of action against either the maker or the indorser. The obligation to it would be fully satisfied, and it could not, if it would, reduce the debt to judgment; hence, Fields was not expected to pay. But there is certainly nothing to commend itself in the assertion that a full process of collection was elaborated against Fields when, should the indorsement control, it was his duty to pay at once without suit. Yet this view must be taken if the construction of plaintiff in error is to prevail. Candor will scarcely suffer it to be said that Fields contracted to have himself sued in order to goad himself by judgment and execution into performing his simple legal duty to pay, or that the milling company engaged to embark upon such an anomalous undertaking. Nor is it more reasonable to assume, as must be done if Fields were to be sued, that he reserved the privilege of receiving from the milling company $6000 for himself out of $10,000, which he was to be harrassed by litigation in paying to it. Therefore, the process of collection stipulated for was not to be directed against Fields.

From this it must follow as a necessary implication that the note was to be collected from DeWitt alone.

Milling Co. v. De Witt.

This construction of the contract is aided by the fact that the milling company withheld all benefits of the transaction from Fields until the result of the proceedings to collect should be ascertained. It was not necessary to do this beyond the maturity of the note if Fields were then required to pay, but so long as the milling company had assumed the burden of prosecuting an uncertain litigation and owed it as a duty to Fields so to do, it could rightfully secure itself against barren results, and it could justly reserve the privilege of determining what course should be pursued after judgment, as the last paragraph of the contract contemplates.

It clearly appears, therefore, that in the suit against DeWitt it was to the mutual advantage of both Fields and the milling company that the milling company should succeed. Their interests were identical and not adversary, and hence Fields was improperly joined as a defendant under section 36 of the code (Gen. Stat. 1901, § 4464), which provides that "any person may be a defendant who has or claims an interest in the controversy adverse to the plaintiff." This being true, under the well-established law, no summons could issue for DeWitt from the county in which the suit was commenced.

The judgment of the district court is affirmed.

All the Justices concurring.