MORRIS P. BRAY AND ANOTHER *vs.* ANDREW F. LOOMER AND ANOTHER.

New Haven & Fairfield Cos., Jan. T., 1892. ANDREWS, C. J., CARPEN-
TER, SEYMOUR, TORRANCE and FENN, Js.

The plaintiffs, who owned certain patented improvements in the making of corsets, made a written contract with the defendants by which the latter were licensed to manufacture and sell corsets with the improvement, they agreeing to pay twenty-five cents as a license fee for each dozen made and sold. Later the plaintiffs signed and delivered to the defendants, and the defendants without signing accepted, an agreement that, in view of the large amounts which the defendants had spent and were spending in advertising the corsets and pushing the sale of them, they might retain fifteen out of the twenty-five cents license fee per dozen, "as payment for advertising done and to be done by them as they might see fit." Held—

1. That the later agreement, though signed only by the plaintiffs, operated as a modification of the original contract.
2. That by it the deduction from the license fee was fixed absolutely at fifteen cents, and was not made to depend upon the amounts expended in advertising.

Bray *v.* Loomer.

The plaintiffs offered in evidence a letter from the defendants enclosing a draft of the second contract for their signature, and stating reasons why it was desirable that the plaintiffs should sign it, the plaintiffs claiming that it held out false inducements. Held that, upon the pleadings, which presented only the question whether the plaintiffs executed and delivered the second contract, the letter was not admissible.

[Argued January 19th—decided February 29th, 1892.]

ACTION to recover a royalty claimed to be due to the plaintiffs under a contract with the defendants upon certain patented articles made by the latter; brought to the Superior Court in New Haven County, and tried to the court before *Thayer, J.* Facts found and judgment rendered for the defendants, and appeal by the plaintiffs. The case is fully stated in the opinion.

*G. Kendrick,* for the appellants.

1. The paper executed by the plaintiffs on May 13th, 1886, and relied upon by the defendants, is not a valid contract because not signed by both the parties. The only valid and obligatory contract between the parties is that of May 8th, 1886. The later one is a mere proposition, an attempt at a meeting of minds, but not in any sense an agreement. *Society in Newburyport* v. *Currier,* 3 Met., 419. "A contract ought to be mutual, and if one party cannot enforce it the other ought not to." *Lawrenson* v. *Butler,* 1 Sch. & Lefr., 13. Here the paper was drawn by the defendants, prepared for the signatures of both parties and sent in duplicate; showing clearly that it was not expected to be obligatory till signed by the defendants.

2. Assuming that the original contract is actually modified by the later paper, what, then, are the rights of the parties? Plainly the plaintiffs offer (if the defendants will agree to advertise and will advertise) "to allow them to *retain* and *deduct* out of the license fee of twenty-five cents per dozen the sum of fifteen cents per dozen." For what? "As *payment* to them for advertising done and to be done by them." It is only as payment for moneys expended and to be expended by them in that way, that they were allowed to

retain this $6,215 of the plaintiffs. What more? This advertising should be for the benefit of this style of corset alone. The plaintiffs could not have intended that the defendants should appropriate their money for *all* the advertising in the different branches and styles of their extensive business. They assumed no such burden as that. Nor were the plaintiffs, by the evident intent of the document, to pay *all* the expense, by this rebate, of advertising even their own patented corsets. The very preamble starts off with— " Whereas said Loomer's sons have spent and are spending large amounts," etc., and—" Whereas, we are willing to allow said Loomer's sons * * * *towards* said advertising," etc. The use of the preposition " towards " shows the full intent. The plaintiffs desired that the defendants should push the sale of their patented corsets. To do this quite an advertising fund had to be expended by them. Increased sales meant profit for both parties—for the defendants in direct profit on the goods, for the plaintiffs in larger royalties. As there was to be a mutual profit by increase of sales, the burden of bearing the expense of advertising might fairly be borne mutually. To this end the plaintiffs offer to contribute a sum equal to fifteen cents per dozen as their fair share *towards* that object, and to place it in the defendants' hands to be so expended. How did they expend that large fund? The finding shows very clearly what they did with it. They appropriated every dollar of it, paid out nothing of their own funds for advertising either their own goods or ours, charged against it every dollar spent by themselves in advertising their own entire business, of which the plaintiffs' patented corset was a meager part, and still, while contributing themselves nothing to advertising our goods, and while unconscionably compelling us to pay the entire advertising bills of their firm, they have a balance of our money remaining unexpended in their hands, for the court finds that " *said sum*—spent as set forth—*did not amount to fifteen cents per dozen.*" Even on this showing they are permitted to retain our money and appropriate it, for which there is no sort of pretense that we have received the slightest con-

sideration. Are not the plaintiffs at the very least entitled to whatever balance is in the hands of the defendants, unexpended by them for the purpose for which they were allowed to hold it?

3. If the paper is to be allowed any effect, as either modifying or controlling the original contract, then the plaintiffs insist that their claim of the admissibility of " a certain letter, written by the defendants to the plaintiffs, and enclosing the paper in duplicate, before its execution, and setting forth the advantages, reasons and inducements, why it was desirable that the plaintiffs should execute the same," was perfectly proper. If the paper was to come in as evidence at all, surely a letter, inducing, interpreting, explaining and enclosing it, should be admissible, as supplying, at least in a measure, what that document lacks. Certainly it is the only scrap of evidence containing a vestige of the signatures of the defendants, as determining their assent or acceptance. The court finds that it was "*accepted* by the defendants," which is or ought to be a legal inference from *facts* proved ; yet the only subsidiary document, in their own handwriting, throwing any light on *what* they accepted, or *how* they did it, is excluded from the evidence. If the paper is on its face a contract, it must be so construed as to stand alone. The finding of its " acceptance " by the defendants is only another way of supplying their signatures to it by parol testimony. It is a well known rule of law, of every day application, that " extrinsic evidence as to parties, their relations, their acts at the time and later, and the nature and conditions of the subject matter, are admissible. In *Knight* v. *N. Eng. Worsted Co.*, 2 Cush., 271, SHAW, C. J., says:— " Parol evidence, though not admissible to add to or to vary the terms of a written contract, is admissible to prove facts and circumstances as to the relations of the parties, and the nature, quality and condition of the property which is the subject of the contract, and also the acts of the parties, *at and subsequent* thereto, for the purpose of ascertaining *their understanding of its terms.*" Under this rule no one doubts but that conversations between the parties at the time

of making a contract, entering into its substance, would be admissible. Why not, with added force, letters between the parties, contemporaneous with and explaining the purpose and intent of a document which the letters themselves enclose? *Bradbury* v. *Dwight*, 3 Met., 31; *Jackman* v. *Bowker*, 4 id., 235. A point strikingly similar to the one for which we now contend was raised in *Hodges* v. *King*, 7 Met., 583, and the evidence held admissible.

*W. H. Williams* and *E. B. Gager*, for the appellees.

SEYMOUR, J. On the 8th day of May, 1886, Morris P. Bray and John Kendrick, parties of the first part, and L. L. Loomer's sons, parties of the second part, entered into a written agreement. By its terms the parties of the first part, the plaintiffs, licensed the parties of the second part, the defendants, to manufacture and sell, subject to the conditions named in the agreement, corsets containing patented improvements belonging to the plaintiffs. The defendants agreed to pay to the plaintiffs twenty-five cents as a license fee upon every dozen of corsets made by them containing the patented improvement, which license fee was to be payable at the time of the returns in the agreement provided for, or within fifteen days thereafter.

Subsequently the plaintiffs made, executed and delivered to the defendants, and the defendants accepted, a contract in writing as follows, to wit:— .

" Whereas, by license dated April 8th, 1886, L. L. Loomer's Sons secured from us the right to make and sell corsets under letters-patent No. 323,630, dated August 4th, 1885, and agreed to pay a license fee and royalty of twenty-five cents a dozen on corsets made and sold by them containing the invention described and claimed in said letters-patent; and

" Whereas said L. L. Loomer's Sons have spent and are spending large amounts in advertising said corsets and pushing the sales of the same, which is greatly to our advantage as licensors; and

" Whereas we are willing to allow said Loomer's Sons fifteen cents per dozen out of said royalty of twenty-five cents per dozen towards said advertising, so long as they shall manufacture and sell corsets containing said improvements :—

" Now therefore, in consideration of one dollar paid to us by said Loomer's Sons, and as an agreement collateral to and in modification of said license, we hereby agree to and will allow said L. L. Loomer's Sons to retain and deduct out of said license fee of twenty-five cents per dozen, the sum of fifteen cents per dozen, as payment to them for advertising done and to be done by them as they may see fit, in endeavoring to create a demand for and sell said corsets ; so that the net license fee which said Loomer's Sons shall pay us shall be ten cents per dozen, and no more, on said corsets made and sold by them under said license. And at each payment to us under said license said Loomer's Sons may retain fifteen cents per dozen out of the sum due by statement and the balance of ten cents per dozen shall be in full of royalties due us under said license. Dated at Chi-. cago, May 13, 1886. MORRIS P. BRAY,

JOHN KENDRICK."

On November 18th, 1890, the plaintiffs brought a suit against the defendants for a breach of the first contract, complaining that the defendants, instead of paying them twenty-five cents royalty or license fee upon every dozen of corsets manufactured by them under the terms of said con-. tract, had paid them only ten cents per dozen therefor, and claiming as damages the difference between ten cents per. dozen and twenty-five cents per dozen from the date of said contract.

The answer of the defendants admitted that they had paid. but ten cents royalty to the defendants, and alleged that after the execution of the contract set out in the complaint the plaintiffs executed the contract of May 13th, set out in the answer, and which was a modification of the original contract, so that ten cents per dozen was all that was due to the plaintiffs, which had been paid in full. ·

The plaintiffs' replication was a simple denial of all the paragraphs of the answer.

The court found that the second contract was made, executed and delivered by the plaintiffs, and accepted by the defendants. It also found that prior to its execution the defendants had expended considerable sums of money in advertising the corset containing the plaintiffs' patented invention, and continued thereafter to expend large amounts in such advertising up to the commencement of this action; and that the plaintiff Kendrick was in the employment of the defendants as traveling salesman at the time the contract was made, and so continued until a few weeks prior to the bringing of this action, and from time to time he made to the defendants suggestions as to where and to whom such advertisements should be sent, which suggestions were followed by the defendants. In all of such advertising the defendants acted in good faith and used their best judgment in determining the means of bringing said corset before the public and in endeavoring to create a demand and sale therefor.

The finding further states that up to the date of the suit the defendants had manufactured and sold 41,434 dozen corsets containing the plaintiffs' improvement, of which they duly made return to the plaintiffs, in compliance with the terms of the original contract; and at the date of said return paid to the plaintiffs ten cents for each dozen corsets manufactured. The total sum of such payments is $4,143.40.

During the trial the plaintiffs offered in evidence a certain letter written by the defendants to the plaintiffs, and enclosing the second or modifying contract in duplicate, before its execution, and setting forth the advantages, reasons and inducements why it was desirable the plaintiffs should execute the same. The plaintiffs claimed the right to introduce the letter as a part of the *res gestæ* and as holding out to them a false inducement to sign said contract. The defendants objected to its admission, the court excluded it, and the plaintiffs duly excepted. The plaintiffs objected to, the admission of the second contract when offered, on

the ground that it was not signed by both parties, as appeared on its face, that it showed no meeting of minds necessary to a contract, and that it had not in law the effect of a contract. The court overruled the objection and admitted the contract, the plaintiffs duly excepting. The plaintiffs claimed that judgment should be rendered in their favor upon the facts for the sum of $6,215.10, as the balance due them under the original contract.

The court rendered judgment for the defendants to recover their costs.

We must of course confine our attention to the claims made and ruled upon at the trial. It appears that the plaintiffs objected to the admission of the second contract on the ground that "it was not signed by both parties, as appeared on its face, that it showed no meeting of minds necessary to a contract, and that it had not in law the effect of a contract." Of course there is a large number of the most obligatory contracts which are signed only by the party to be charged therewith, and which, upon their face, show no meeting of the parties' minds. A promissory note signed by the plaintiffs and delivered to the defendants would be open to that criticism. It needs no argument nor citation of authorities to show that a written contract executed by all the parties thereto may be modified by a subsequent written contract signed only by the party who thereby surrenders some right or advantage secured to him in the original contract.

As to the letter offered in evidence by the plaintiffs, there is nothing in the pleadings to justify its admission. The plaintiffs denied that they ever made, executed and delivered the modifying contract. That was the issue, and not whether false inducements had been held out to them to execute it. Upon the issue as presented by the plaintiffs themselves the letter had no bearing and was properly excluded.

As a general claim the plaintiff insisted that upon the facts they were entitled to judgment for $6,215.10, as the balance due them under the original contract. In their brief the plaintiffs, in support of this claim, argue that the

modifying contract must be construed as making the reduction in the royalties dependent upon the expenditure of an equivalent sum by the defendants in advertising, and that, in as much as the court has found that after the execution and delivery of said contract, though the defendants continued to expend large sums in advertising, such sums did not amount to fifteen cents per dozen, therefore the defendants can take no benefit from said contract. It is possible that the plaintiffs intended to make the reduction in royalties dependent upon the expenditure of a like sum in advertising, but it does not seem very probable, as it would have been so easy and natural to have said so if intended. The addition of a few words to that effect, if such was the intention, would have expressed it. As it is, whatever the suggestions of the preamble, the body of the contract is a clear, unconditional modification of the original contract, and under it the payment of ten cents per dozen, as royalty, was full payment.

The original contract provides that upon failure of the defendants to pay the license fee of twenty-five cents therein provided, the plaintiffs may terminate the same upon written notice. The finding shows that one of the plaintiffs was a traveling salesman for the defendants when the original contract was made, and so continued until a few weeks before this suit was brought, and from time to time suggested to the defendants where and to whom to send their advertisements, which suggestions the defendants followed. It also appears that for more than four years before this suit was brought the defendants, at the date of each return, which the contract required to be made quarterly in each year, paid to the plaintiffs ten cents per dozen for each dozen corsets shown by such return to have been manufactured by the defendants. It nowhere appears in the record that any objection was made by the plaintiffs before the commencement of the suit, that such payment was not a full compliance with the defendants' obligations. Such a contemporaneous exposition by the parties of the meaning of the modifying contract confirms our construction of it.

The plaintiffs made no claim in the court below that they were entitled to recover, in addition to the ten cents per dozen already paid, so much of the remitted fifteen cents per dozen as the defendants had not paid out in advertising. No construction of the second contract in that or any other particular was asked for. On the contrary they put their case upon the claim that there was no second contract, and that they were entitled to recover twenty-five cents per dozen for each dozen of corsets manufactured by them, less only the amount already paid.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.