HARRY M. LEVENTHAL *vs.* TOWN OF STRATFORD.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued February 4th—decided April 14th, 1936.

*David R. Lessler,* for the appellant (plaintiff).

*Raymond E. Baldwin,* for the appellee (defendant).

BROWN, J. The finding, corrected in so far as the record warrants, discloses the following pertinent facts: May 27th, 1933, Charles J. Heimann was indebted to the defendant for taxes and for funds advanced by it to him as a relief measure, in an amount exceeding $1000. On that date, under arrangement made with the defendant's town manager Sammis, who had general authority to represent it, Heimann by bill of sale transferred his 1924 Mack truck to the defendant to be used by it, such part of its earnings as necessary for his living to be paid to him, and the balance to be applied to reduce his indebtedness to the town, and the truck to be transferred back when this was fully paid. Up to November 15th, 1933, after deducting the expense of operating and maintenance, the truck's net earnings were $697.35 which was divided between Heimann and the defendant as agreed. From May 27th, 1933, on, the truck was driven by an employee of the defendant other than Heimann, was serviced and repaired by it, and except when in actual use was kept in the town yard.

At the time of the transfer of the truck to the defendant, Heimann owed the plaintiff $1337.25. This was unknown to the defendant and its officers, however, and the transfer was not made to avoid attaching creditors. On January 24th, 1934, pursuant to a writ returnable to the Superior Court in Fairfield County in favor of the plaintiff, in which Heimann and the defendant were named defendants, a sheriff seeking to attach this truck came to the town manager's office. Sammis deprecated his going through with the proposed attachment saying it would tie Heimann up so that he could not pay any of his debts, and suggested that, instead, the sheriff ascertain from his principal whether an arrangement could be made whereby Heimann, the defendant, and the plaintiff could each

procure a share in the earnings of the truck. He agreed meantime not to use the truck. To further the realization of this proposal, it was agreed in consideration of the sheriff refraining meantime from taking actual possession of the truck, that Sammis should keep but not use it and the attachment thereof should be effective as between this plaintiff and defendant, until action had on the town manager's suggestion. January 27th, 1934, as a result of the consequent negotiations of the parties, the plaintiff's attorney notified Sammis that the truck was released.

This and the plaintiff's discontinuance of the proceedings in the Superior Court were pursuant to the agreement of these parties and Heimann recited in Exhibit A, the town manager's letter to the plaintiff's attorney, whereby the defendant agreed "in the event of being permitted to use the . . . truck, . . . to take the earnings of that truck and split it three ways; one-third to go to the Town of Stratford for taxes and one-third to go to . . . Heimann. In the event that the earnings are not sufficient to make the Leventhal third equivalent to ten dollars, ten dollars will be paid, making the Leventhal weekly share not less than the minimum of ten dollars. By doing this it will enable the Town of Stratford to still get some revenue in tax delinquency payment, give Heimann something to enable him to keep the truck going, and also provide a definite cash return to Mr. Leventhal which he otherwise would not be able to procure." Upon request on March 5th, 1934, after the plaintiff had indorsed his formal approval on this letter, his attorney inclosed it to the defendant's attorney, in a letter stating the amount due from Heimann to the plaintiff, including the costs in the Superior Court action, to be $1399.29, and suggesting remittances by the defendant once every three months. The defendant's attorney replied

that he had suggested this to the town and it would so remit.

On March 5th, 1934, and thereafter the defendant was conducting a public works program necessitating the hiring of a number of trucks owned by others. The plaintiff never reattached the truck nor retracted his permission to the defendant to use it, and the truck was always available for its use when and if the defendant desired to use it. Had the defendant used the truck it would have produced when so utilized sufficient net earnings to provide something each week on Heimann's debt to it, to pay him something each week, and to pay the plaintiff at least the $10 weekly minimum. Notwithstanding, the defendant never used the truck after November 15th, 1933. In October, 1934, the defendant's common council enacted a resolution declaring that no truck not actually owned by the defendant town should be used. This resolution is still in full effect and applicable to this truck. Thereafter the defendant notified the plaintiff that it would not use the truck again, nor make any payment under the above agreement. There is due from Heimann to the plaintiff $1467.58 with interest from January 27th, 1934.

The first count of the complaint sets forth a claim for damages under the contract Exhibit A for the defendant's alleged actual breach for the period of forty-two weeks to date totaling $420, and for its further breach by declaring to the plaintiff it would pay nothing thereunder. The second count, filed as an amendment, contains the allegation of the passage of an ordinance by it forbidding the hiring of such a truck, as a further breach. The defendant's answer contains in effect a denial, and as a special defense a plea which its counsel terms one of ultra vires. The court by its judgment found the issues for the defendant.

Whether the court erred in rendering this judgment depends upon the interpretation and legal effect to be accorded to the contract. The fundamental question of interpretation is as to whether the contract contained an implied promise by the defendant to use the truck. The law is clear that a contract includes not only what is expressly stated therein but also what is necessarily implied from the language used. *Rockwell* v. *New Departure Mfg. Co.*, 102 Conn. 255, 287, 128 Atl. 302; 13 C.J. p. 558, § 521. No special form of words, but that the promise appears upon a fair interpretation, is the essential. "Not only then may promises exist . . . where the language is in terms that of promise, but also where the agreement shows that the parties . . . have intended an obligation though they failed so to state in clear terms." 2 Williston, Contracts, p. 1290, § 670. "If it can be plainly seen from all the provisions of the instrument taken together, that the obligation in question was within the contemplation of the parties when making their contract, or is necessary to carry their intention into effect—in other words, if it is a necessary implication from the provisions of the instrument—the law will imply the obligation and enforce it." 6 R.C.L. p. 856, § 244; *Lawler* v. *Murphy*, 58 Conn. 294, 311, 20 Atl. 457. The concrete question is whether an implied promise by the defendant to use this truck was a part of the contract within the principles above recited.

While Exhibit A expressly provides that in the event of being permitted to use the truck, it will split the earnings between the plaintiff, Heimann, and itself on the basis and with the consequent benefits already recited, it does not state that the defandant will use the truck. By its provision for the division of the earnings with a guaranteed minimum of $10 per week to the plaintiff pursuant to his permitting the defendant

to use the truck, and its recital of consequent benefits to the parties concerned, particularly the "definite cash return" to be realized by the plaintiff, the context of the agreement itself strongly suggests that some obligation by the defendant to use the truck to produce the essential earnings was contemplated by the parties and necessary to carry their intentions into effect. In interpreting the contract, however, not only the whole language of the instrument, but the situation of the parties and the subject-matter of their transactions as well, are to be considered. *Brown* v. *Slater*, 16 Conn. 192, 196. "In arriving at the intent of the parties to a contract as expressed or implied in the language used by them, it is always admissible to consider the situation of the parties and the circumstances connected with the transaction, and every part of the writing should be considered with the help of that evidence." *Shaw* v. *Pope*, 80 Conn. 206, 209, 67 Atl. 495; *Sonnenberg* v. *Daley*, 86 Conn. 1, 5, 84 Atl. 93; *Bryant Electric Co.* v. *Stein*, 95 Conn. 211, 215, 111 Atl. 204.

The facts reveal that after its possession of the truck since May, 1933, had enabled the defendant gradually to collect a part of the indigent Heimann's debt to it, the attachment proceedings instituted by the plaintiff threatened to terminate this possession. To prevent this, the defendant, whose public works program would require it to hire trucks of some kind for a number of months to come, entered into the agreement with the plaintiff evidenced by Exhibit A above recited, predicated upon the consideration that the plaintiff would drop the proceedings and allow its possession to continue. In view of the situation existing, and what was thus done by the parties in connection therewith, it is evident that the purpose of the defendant was to agree that as, when, and so long as

it thereafter had occasion to use the truck, it would do so, and that for each week during which any such use of it should be made, the plaintiff should receive at least $10 therefrom as a consideration to induce him to agree to continue to forego possession under his attachment, and that the purpose of the plaintiff was to agree to give up such rights as were his under his suit and attachment in consideration of the defendant's promise of this specified return from its resumed use of the truck. It is further apparent that these purposes were mutually understood by both parties. The release of the attachment is an extremely significant fact indicative of the intent of the parties. It is most unlikely that the plaintiff would have surrendered whatever advantage he had obtained by this procedure, or that the defendant would have had the temerity to expect him to do so, in return for a mere option in the defendant to use instead of an obligation requiring such use. We therefore conclude that the parties in contracting contemplated and intended as a part of their agreement, a promise by the defendant to use the truck within the limitations above stated until the total of Heimann's debt to the plaintiff had been paid off by the instalments specified, and that this was necessary to carry their intentions into effect. The correspondence between the parties' attorneys shortly after the agreement, suggesting regular remittances at the end of each three months thereunder, is a circumstance which may be regarded as tending to confirm this conclusion. *Bray* v. *Loomer,* 61 Conn. 456, 464, 23 Atl. 831; *Construction Information Co.* v. *Cass,* 74 Conn. 213, 217, 50 Atl. 563; 6 R.C.L. p. 852, § 241. In the absence of a valid defense, breach by the defendant of this implied promise would give rise to a right of action in the plaintiff. 3 Williston, Contracts, p. 2369, § 1318.

Assuming, without deciding, that the defendant's special defense, that neither it nor its town manager had power or authority by law to agree that it should pay another's debt, properly raises a defense of ultra vires, it is without merit on this record. From the terms of the agreement as above recited and discussed, it is apparent that it is not and does not purport to be an agreement by the defendant to pay Heimann's debt to the plaintiff. It is simply an agreement by virtue of which the defendant obtained the right to use the truck, for a price to be paid in part to the plaintiff with a guarantee that the latter would receive a minimum amount for each week during which any such use of the truck was actually made. Even though it be inferred from Heimann's approval of this agreement and the other circumstances, that the plaintiff was to credit to his bill whatever was received from the defendant, this was certainly no part of the contract of the plaintiff and defendant and if done would be at the most but an incidental result from it. The town clearly had authority to contract for the use of this truck to carry on its public works program. Special Laws, 1927, p. 259, § 1; Special Laws, 1935, p. 335, § 1. That the town manager had general authority to represent the town and to conduct all of the negotiations involved in this transaction and that he did so as its agent is expressly admitted by paragraph one of the defendant's answer, and his authority to settle and adjust claims against the town is specifically provided under §§ 303 and 433 of the General Statutes. The trial court erred in sustaining the defendant's special defense.

Not only did the defendant fail to use the truck at all after the agreement was made, but after its common council had adopted a resolution accepting a recommendation against the further employment of any out-

side trucks, it gave notice to the plaintiff that it would not use the truck again. This express repudiation by the defendant constituted an actionable breach of the contract and entitled the plaintiff to treat it as putting an end thereto for all purposes of performance and to sue as he has for the money he would have otherwise realized thereunder. He is entitled to recover that compensation which will leave him as well off as he would have been had there been full performance. *Raff Co.* v. *Murphy,* 110 Conn. 234, 242, 147 Atl. 709; *Lee* v. *Harris,* 85 Conn. 212, 214, 82 Atl. 186. What this amount is must be ascertained upon proper evidence directed to this issue as determined by the interpretation of the contract set forth in this opinion.

The second count of the complaint claimed a recovery based upon the allegation that the defendant town had passed an ordinance or resolution, mandatory upon the town manager, that no trucks not owned by it would thereafter be employed, thus placing it out of its power to use the Heimann truck, and that by so doing the defendant broke the contract in its entirety. The trial court in the view it took of the construction of the contract had no need to pass upon this claim and apparently did not consider it, nor has the appellee argued it before us. The finding as to the matter is far from clear, no copy of the vote was placed in evidence, and the manner in which it is referred to in the finding seems hardly to accord with the testimony at the trial, brought before us by the plaintiff. Moreover, in his brief the plaintiff argues his claim as being one for an anticipatory breach of the contract. Under these circumstances, and as a new trial must be directed upon the first count, we do not consider the correctness of this claim.

There is error; the judgment of the Court of Com-

mon Pleas is set aside and the cause remanded to be proceeded with according to law.

In this opinion the other judges concurred.