UNITY LODGE, AMALGAMATED LOCAL 405, OF THE INTERNATIONAL UNION, UNITED AUTOMOBILE, AIRCRAFT AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, C.I.O., ET AL. *v.* NILES-BEMENT-POND COMPANY

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued June 8—decided July 20, 1954

*William S. Zeman,* with whom, on the brief, was *Harry Cooper,* for the appellants (plaintiffs).

*Walfrid G. Lundborg,* for the appellee (defendant).

INGLIS, C. J. On the trial of this case the named plaintiff, hereinafter referred to as the union, claimed that under the proper interpretation of two collective bargaining agreements, identical in terms so far as the issues involved were concerned but covering different periods of time, the defendant was bound to adjust the rates of pay of steam fitters and plumbers in its plant so as to equalize them with the "going rate" for steam fitters and plumbers in Hartford County. The union prayed a judgment for the specific performance of the agreements as so interpreted. The individual plaintiffs, who were steam fitters and plumbers employed by the defendant, sought to recover damages for a breach of the contracts in that the defendant had not adjusted their pay in accordance with the claimed interpretation of the agreements. The trial court rendered judgment for specific performance, but not to the extent requested by the union, and in favor of the defendant as against the individual plaintiffs. From that judgment all the plaintiffs have appealed.

Although the plaintiffs have assigned error in the failure of the trial court to add thirty paragraphs of the draft finding, and in the finding of eighteen of the thirty-five paragraphs of the finding, no change in the finding of subordinate facts material to the determination of the issues is warranted.

The facts found are the following: On June 13, 1949, and again on November 30, 1950, the union, as the bargaining representative of the defendant's employees, including the individual plaintiffs, entered into collective bargaining agreements with the defendant. In each of these contracts article 6, § 6, provided: "The Company shall continue its policy of making individual adjustments [of pay] in line with the efficiency and skill of individual employees. The formulation and administration of the job evaluation system are solely the functions and responsibilities of the Company. The classification of jobs under the job evaluation and the grading of individual employees are the subject matter of grievances to be dealt with under the grievance procedure."

The job evaluation plan referred to was put into effect in the defendant's plant in October, 1945, through the services of industrial engineers. Its purpose was the evaluation and classification of the jobs performed by the employees. In the application of this plan the first step was to score each job in the plant. A specified number of points were assigned to each of the grades established under each of the eight or nine factors by which all jobs were to be tested. A detailed description of every job in the plant was prepared, and on the basis of this description the grading of the job as to each factor was determined. In this way the total number of scoring points for each job was figured. That total would reflect the skill, knowledge, experience and

other elements requisite for the particular job as compared with other jobs. The next step was to place each job in one of the fourteen job levels established for the plant. This was done by assigning to each level a range of scoring points and placing each job in the level in which its total of scoring points was found. Minimum and maximum hourly rates of pay were prescribed for each job level, and these were changed from time to time as the result of negotiations with the union. These rates determined the range of pay of each employee.

The explanation of the plan as promulgated contained this statement: "Job evaluation determines relative values only. The next step is to set up a wage scale using a minimum and maximum rate for a particular plant as determined by 'going' rates in the community or industry insofar as such rates can be determined." It is upon the last sentence of this statement that the plaintiffs predicate their case. It is their contention that the rates of pay of steam fitters and plumbers in the defendant's plant are and have been below the going rate and that they should have been adjusted to coincide with that rate.

When the plan was instituted in 1945, the defendant established a minimum rate for job level 1 and a maximum rate for job level 14 and, in doing so, inquired into the minimum and maximum rates in the various industrial plants in Hartford. Under the plan, the job level into which a job is placed is not determined by a predetermined rate to be paid for the job or by what some other employer pays for a job called by the same name. It is determined by the position which the job occupies in relation to other jobs between the minimum rate of pay for job level 1 and the maximum rate of pay for job level 14. There is no evidence that in maintaining

its job evaluation plan the defendant has considered the going rates of pay in the area as one of the factors in the determination of its rates of pay, apart from the fact that the going rates may have been reflected in several general wage increases for all employees which have been made as a result of negotiation with the union. These general wage increases, however, compare favorably in frequency and amount with those granted by other industrial employers in the Hartford area.

Job evaluation plans similar to that of the defendant are in common use in all the other large industrial plants in the Hartford area. The plans in some plants have nine job levels, others eleven, twelve or thirteen. They also differ among themselves with respect to the minimum rate for the lowest job level and the maximum rate for the highest job level. Each employer writes a job description on the basis of the job to be done by an employee in its own plant, without regard to or comparison with the job descriptions and requirements of other employers. The descriptions of jobs of the same general name in the various plants differ because of the particular requirements of each employer. The functions and duties of maintenance workers, such as steam fitters and plumbers, in any particular plant differ from those of similar employees in other plants. Accordingly, they are placed in different job levels with consequent different rates of pay. Moreover, wage adjustments affecting all employees are made by employers in varying amounts and at varying times in the year. Because of these variables, there was no basis in the evidence for a determination of the going rate of pay in the area for the job designated by the defendant as "steam fitter and plumber."

The present dispute first arose in November, 1949. At that time the union filed a grievance stating: "Plumbers are scored improperly and unjustly. Area rates are considerably above Niles rates on plumbing. This job is out of balance in relation to other jobs in the maintenance department." The adjustment asked was: "Proper and just scoring in Plumbers' Classification in relation with area practice and in relation to other jobs in maintenance department." Pursuant to the collective bargaining agreement this grievance was finally submitted to arbitration, and on January 22, 1951, the arbitrator rendered his decision. The gist of his award was that he was powerless under the collective bargaining agreements to fix rates of pay for the employees but that the agreements required that "going rates in the area are to be considered a factor in establishing the rate of pay of [the] employees. This is not to say that such rates are the sole factor. . . . It was expected that [the company] was to take into account prevailing wages for like jobs and to keep in reasonable line with these." He also found "that the Company has failed to perform its duty under the job evaluating article of the contract and that a proper interpretation of that article requires the Company to consider from time to time going rates of pay in the area in maintaining its job evaluating system." This award was confirmed by judgment of the Superior Court on April 27, 1951.

The conclusions arrived at by the trial court in the case at bar may be summarized as follows: Under the collective bargaining agreements, the pay rate of steam fitters and plumbers was not to be determined solely on the basis of the going rate in the area. The defendant did not breach its obligation under article 6, § 6, of each agreement by failing to

adjust the rates for steam fitters in accordance with the going rate for steam fitters and plumbers in the Hartford area. Under the award of the arbitrator and the collective bargaining agreements, there was no basis upon which the court could establish the pay rate of steam fitters and plumbers, and therefore there was no basis upon which an award of damages to the individual plaintiffs could be made. The plaintiff union, however, was entitled to specific performance of article 6, § 6, in line with the ruling of the arbitrator that in evaluating the job of steam fitter and plumber the item of the going rate should be considered together with other factors. The question presented on this appeal is whether these conclusions are supported by the subordinate facts found.

The fundamental problem involved in the case is just what weight was required, under the agreements between the parties, to be given to the going rate of pay for steam fitters and plumbers in the Hartford area. The award of the arbitrator did not resolve that problem. It did decide that the going rate of pay should be taken into consideration but that it was not the only factor. The award clearly did not make it the controlling factor. On the other hand, the sentence, previously quoted, appearing in the explanation of the job evaluation plan is somewhat more definite. It is that, after job evaluation has determined the relative values of all jobs in the plant, "[t]he next step is to set up a wage scale using a minimum and maximum rate for a particular plant [in this case the defendant's] as determined by 'going' rates in the community or industry." This statement speaks of "a minimum and maximum rate" for the plant as a whole. In the defendant's plant that was the minimum rate for job level 1 and the

maximum rate for job level 14. It is only those rates which are to be determined by the going rates in the community. There is in this no suggestion that the rates of pay for any specific job are to be fixed directly by the going rates for that sort of job in the community. The only way in which, under the agreements, going rates of pay can affect the rate for a particular job is indirectly through their effect on the establishment of the minimum and maximum rates for the entire plant. If by reason of a change in going rates of pay in similar industries the minimum and maximum rates for the whole plant are increased, it will follow that the rates of pay for each job level will be increased and thus the rates of pay for jobs in each job level will go up.

To put it another way, the basic principle of the plan is that the rate of pay for a job is not in any way affected by the title attached to the job. It is determined by the rates of pay for the job level in which the job is placed, and that depends on the character of the work demanded of the job. The effect of the assignment of any specific job to a given job level is to give it a rank relative to all other jobs in the plant. Accordingly, there are, under the plan, only two ways by which the range of pay for a particular job can be changed. Either the wage scale for the entire plant can be changed or the job can be transferred from one job level to another. Specifically, to raise the pay of a steam fitter without either raising the pay scale of the whole plant or transferring the job of steam fitter to a higher job level would be violative of the basic scheme of the plan. This would be true even though it could be shown that steam fitters generally throughout the area, doing exactly the same work, had received increases in pay, because a man's pay

under the plan is determined by the job level into which the job he does falls, and this, in turn, is determined solely by the specifications for the job itself.

Thus we conclude that it is not the intent of the plan to require that the pay for any specific job be adjusted to the going rate of pay for the same sort of job in other plants in the same area. It follows that the contracts between the union and the defendant do not require the pay of employees classified as steam fitters and plumbers in the defendant's plant to be adjusted to correspond directly with the pay of employees denominated steam fitters and plumbers in other plants in the Hartford area. Consequently, the defendant had not breached the contracts by failing to adjust the pay of its steam fitters and plumbers on that basis.

Furthermore, even though the company had breached the contracts in that regard, there was a valid reason why the trial court was in no position to award damages to the individual plaintiffs. It was found that such differences existed between the functions performed by employees referred to as steam fitters and plumbers in the respective industrial plants in Hartford that there was no real basis upon which the job of steam fitter and plumber in the defendant's plant could be compared with the jobs denominated steam fitter and plumber in the other plants. Consequently, the going rate for jobs such as those held by the plaintiffs could not be ascertained. The measure of damages of the individual plaintiffs, if there had been a breach of contract, would have been the difference between the wages they had actually been receiving and those they were entitled to. *Leventhal* v. *Stratford*, 121 Conn. 290, 299, 184 A. 587. The latter could not be ascertained

or fixed by the court. Therefore, the damages of the individual plaintiffs could not have been measured. *Dean* v. *Connecticut Tobacco Corporation,* 88 Conn. 619, 624, 92 A. 408; *Braithwaite* v. *Lee,* 125 Conn. 10, 13, 2 A.2d 380; *Doeltz* v. *Longshore, Inc.,* 126 Conn. 597, 601, 13 A.2d 505.

The conclusion of the trial court that the plaintiff union was entitled to specific performance of its contract with the defendant, meaning thereby that in any revision of the defendant's scale of wages the going rates of pay in the Hartford area should be considered as one of the factors determining the minimum pay for job level 1 and the maximum pay for job level 14, was correct. The trial court was also right in concluding that the individual plaintiffs were not entitled to recover damages.

There is no error.

In this opinion the other judges concurred.