FRANK A. McGILL v. FRANCIS M. MALO ET AL.

SUPERIOR COURT     NEW HAVEN COUNTY     FILE No. 88833

Memorandum filed March 1, 1962

*O'Keefe, Johnson & O'Keefe,* of New Haven, for the plaintiff.

*Joseph J. McGuinness* and *Mathilda C. Laflamme,* of Guilford, for the defendants.

FITZGERALD, J. The within case was tried to the court on February 13 and 14, 1962. In regard to

those allegations of the complaint in two counts which the defendants have denied and are therefore in issue, the court has held the plaintiff to the required degree of proof. As stated in *Beckwith* v. *Stratford,* 129 Conn. 506, 507, it is that "proof which produces 'a reasonable belief of the probability of the existence of the material facts' "; or, as stated more directly in *Conley* v. *Board of Education,* 143 Conn. 488, 497, his proof upon the evidence "must, when considered fairly and impartially, induce a reasonable belief that the fact in issue is true." The parties to this case are the following: As plaintiff, Frank A. McGill, presently living in New Haven; as defendants, Francis M. Malo and Margaret G. Malo, husband and wife, of West Haven. The blood relationship between the plaintiff and the first-named defendant is that of grandfather and grandson. On March 7, next, the plaintiff will become ninety years of age.

As drawn, the plaintiff's complaint is in two counts. The first count alleges in effect breach of contract on the part of the defendants to furnish support and maintenance to the plaintiff for the remainder of his natural life. The second count is one sounding in conversion de certain items of personal property alleged to have been owned by the plaintiff. Without discussion, the issues pertaining to the second count are found in favor of the defendants. It is the first count which requires consideration. In doing so, the court will keep at a minimum a narration of subordinate facts. If there should be an appeal from the judgment herein to the Supreme Court, counsel will be afforded an opportunity by their submitted draft findings to participate in formulating a detailed finding of facts for the appellate tribunal.[1]

---

[1] The subsequent appeal to the Supreme Court of Errors by the defendants was withdrawn.

On December 3, 1953, the parties hereto entered into a written contract, referred to in the first paragraph of the first count of the complaint, which contract has been introduced in evidence as exhibit A. The subject matter of that contract is not in issue. Hence it need not be restated or summarized in this memorandum. Pursuant thereto, the plaintiff deeded the real estate owned by him (259 Elm Street, West Haven, Connecticut, consisting of a dwelling house and lot area) to the defendant Margaret G. Malo. At the time of the execution of the contract and of the conveyance of the property, the plaintiff was not in good physical health. His wife had died in December, 1950, and following her death he was very much on his own. There is no question that the state of his health, including physical infirmities, required care and attention of his person. Operations prior to the execution of the contract, and subsequent thereto, combined to reduce what physical stamina a man of the plaintiff's advanced years could be expected to possess.

Following the execution of the contract and the conveyance by the defendant of the real estate in question, the parties lived on the property conveyed. The house has been described as one of eight rooms, having at least two floors. The front bedroom on the second floor was assigned to and occupied by the plaintiff when he was not otherwise in a hospital. Sometime after 1953, the defendants rented out to a tenant all of the rooms on the first floor excepting the front room on that floor. Monthly rentals derived from this arrangement are presently yielding the defendants $65 a month.

While the plaintiff's income of a personal nature is not relevant to the basic question presented under the first count of his complaint, which is the only count the court is of the opinion should be considered, such income will be listed parenthetically.

Since his retirement from the Connecticut Company in 1943 as a claims adjuster, he has been receiving a monthly pension of $65; and from the federal government, as the result of the death of his son, a World War I veteran, he is the recipient of $75 a month.

On May 23, 1957, the plaintiff departed from the premises at 259 Elm Street, West Haven. It was his claim that the attitude and conduct of his grandson, the defendant Francis M. Malo, which included threats to his person and physical violence, brought about and made necessary this decision. "The law is clear that a contract includes not only what is expressly stated therein but also what is necessarily implied from the language used." *Leventhal* v. *Stratford,* 121 Conn. 290, 295. The contract in question by necessary implication contained a provision of humane treatment of the plaintiff. Granting that the care of the plaintiff may have become more burdensome because of his advancing years, that would not justify or warrant subjecting him to unkindness and personal violence. Paragraph 3 of the contract contains a provision concerning the arising of a situation in which the defendants should become unable to care and provide for the plaintiff in their home. As stated in that paragraph, this contingency was considered and the resulting obligations of the defendants to the plaintiff were stated.

As stated at the outset of this memorandum, "the court will keep at a minimum a narration of subordinate facts." Events prior to May 23, 1957, need not be detailed and the respective versions of the parties recited. However, it is found as a fact that the plaintiff is not and never was of unbalanced mind. Whatever infirmities he may have are physical and not mental. The defendants, in entering into the contract in question, knew that they were doing so with a man in advanced years. From their

standpoint he may have lived too long and eventually proved more of a burden to them than anticipated. For all that appears, the plaintiff, as part of his bargain, turned over the only asset he had, namely, the West Haven property, exclusive of his two modest pensions. The defendants now have a home of their own and are receiving monthly rentals from a part thereof.

The inevitable conclusion reached is that the plaintiff has sufficiently demonstrated his right to recover damages under the first count of his complaint. Since the contractual obligations of the defendants to the plaintiff were joint, a breach by one defendant is a breach by both. That the defendants in effect say to the plaintiff, as they did at the trial, "Come home," does not relieve them of their breach of contract and of resulting damages. The plaintiff feels impelled to decline the suggestion, and he is found justified in so doing.

In 50 American Jurisprudence 869-891, there is a chapter entitled "Support of Persons." It is worth reading. In the Cumulative Supplement thereto, with particular reference to § 26 thereof, additional cases and footnotes have been added. An annotation is there cited in 50 A.L.R.2d 614 et seq. At page 619 of that annotation appears this statement: "The majority of the cases seem to agree that upon a total breach of a contract to support a person, such person or his legal representative is entitled to recover damages not only for the period from the date of the breach to the commencement of the action or to the date of trial or verdict, but for the estimated life span of the person as well." There follows a listing and discussion of many cases.

The plaintiff is found entitled to recover damages by way of support from May 23, 1957, the date of the determined breach of the contract of support

by the defendants, until the date of the judgment entered herein, and in the future on the basis of his life expectancy, which has been agreed to be 3.49 years. It can be found, and is found, that it costs the plaintiff at least $125 a month or a minimum of $1500 a year to live and sustain himself in separate quarters, as he has been so doing from May 23, 1957, to date. This monthly sum is deemed to represent the value of, and cost to him, of those undertakings which the breached contract of support placed as obligations upon the defendants. Damages to the plaintiff are awarded as follows: From May 27, 1957, to date hereof, $7125; from date hereof forward for the period of his life expectancy, which is 3.49 years in the future, $5235, less a credit of 6 percent per annum on $1500 for 3.49 years to the defendants on the latter sum, which represents a present payment to the plaintiff on an obligation in the future, $314.10. Hence the latter sum of $5235 is reduced to $4920.90. Total judgment debt under the first count of the complaint is computed to be $12,045.90.

One other aspect should be touched upon if for no other reason than to indicate that the court has not overlooked it. And this is so even though counsel have made no claim of law thereon. In the course of offers of proof by the defendants, it was stated that in 1953 the real estate in question was assessed in the amount of $8944 for tax purposes in West Haven, and that the formula used by the assessors at that time on all properties in West Haven was 80 percent of their fair market value. Assuming this to be so, the real estate at the time of the contract and conveyance in 1953 had a fair market value of at least $11,180. Of course it could have been more. But that apart, the measure of damages in a case of this kind is not controlled by the value of the real estate. Damages are for the breach of

the contract and not for the value of the estate acquired by the defendants. See *Lyman* v. *Lyman,* 133 Mass. 414 (discussed in the annotation, 50 A.L.R.2d 618).

The issues having been found for the plaintiff under the first count of the complaint, judgment may enter for him on that count to recover as damages against the defendants the sum of $12,045.90; and for the defendants on the second count. Costs to the plaintiff as an incident of the judgment.

In conclusion, certain observations are made. A court is precluded from rewriting the terms or provisions of a written contract. The fact that a particular contract in scope may result ultimately in the gain or detriment to one party or the other is of no consequence and does not ordinarily affect its validity or legality. In entering into the contract of December 3, 1953, the plaintiff on the one hand and the defendants on the other necessarily assumed certain calculated risks of gain or detriment to themselves. For example, if the plaintiff died shortly after December 3, 1953, the defendants would have gained handsomely in a material sense. However, the plaintiff has now lived more than eight years after its execution and more than four years after its breach. If the plaintiff does not live for the duration of his life expectancy, the defendants will suffer a further detriment beyond that already occasioned by the plaintiff's longevity to date. In a measure, all detriments to the defendants will be mitigated by the fact that they have acquired a home without the outlay of money by them and an income from rent of a part of the premises, presently amounting to $65 a month. If the plaintiff should live well beyond his life expectancy, it is he who will suffer a serious detriment which cannot at this time be ascertained. These are the "calculated risks," among others, which the parties themselves

assumed on December 3, 1953. The court is powerless to circumvent their effects.

Lastly, to all counsel, go the compliments of the court for an extremely well-conducted trial. Judgment may enter as specified in the second preceding paragraph.