## Barbara K. Gilligan *v.* Gerald S. Gilligan

Superior Court    Fairfield County    File No. 115553 F.R.
AT Bridgeport

Memorandum filed June 4, 1964

*Robert M. McAnerney* and *Peter M. Ryan,* of Darien, for the plaintiff.

*Cummings & Lockwood,* of Stamford, for the defendant.

FitzGerald, J. On November 9, 1960, the plaintiff instituted the within action seeking a decree of separation from the defendant, her husband, together with alimony for herself and custody and support pertaining to the four minor children of the marriage. By answer filed on March 13, 1962, the defendant joined issue. Thereafter, on April 17, 1962, the defendant withdrew his answer, thereby

leaving the action uncontested. On that date the plaintiff amended her prayers for relief as to separation by requesting in lieu thereof a divorce. So, also, on that date the court *(Longo, J.)* entered a decree of divorce in favor of the plaintiff as on file. In adjudging support for the plaintiff and support for the minor children custody of whom was given to the plaintiff, with certain rights of visitation in the defendant, and in adjudging other allied matters, the court did so, and the judgment file so reflects, upon the terms, conditions and stipulations embodied in a comprehensive property settlement and agreement entered into between the parties hereto on March 31, 1962. The court therein expressly noted its approval of the subject matter of the submitted agreement and ordered that it be placed on file. The judgment file as drawn adopts in substance the pattern of that agreement. The agreement itself is listed as file entry No. 10.

The subject of the plaintiff's motion for modification of the judgment and decree entered on April 17, 1962, filed on February 27, 1964, came before the court for hearing on April 10, 1964. It embraces four paragraphs of recitals. The prayer requested is that the judgment and decree on file be modified "by increasing the amount of support and maintenance of the plaintiff and the minor children of the parties."

The judgment and decree of April 17, 1962, and the prior written agreement of the parties hereto entered into on March 31, 1962, impose upon the defendant the following specific monetary obligations of present moment: (1) He shall pay to the plaintiff the sum of $792 a month for her support and maintenance and that of the minor children; (2) he shall pay premiums on health and life insurance policies maintained for the benefit of the plaintiff

and the children and payment of one-half of reasonable dental bills; (3) he shall pay into an educational trust fund for the benefit of the children an additional 25 percent of his gross income in any year exceeding $21,000 up to $25,000.

It is conceded that the defendant to date hereof has never been in default under any of the provisions of the judgment and decree of April 17, 1962, or of the agreement of March 31, 1962. That the defendant was unemployed during the following November and December in 1962 did not result in a noncompliance by him of any of his obligations of record to the plaintiff and their children. Parenthetically, it is noted that at the time the agreement of March 31, 1962, was entered into, the stipulated division of property between the parties was predominantly in favor of the plaintiff.

It has been made to appear that at the time the divorce action came before the court for disposition on April 17, 1962, the plaintiff was in the employ of the Flintkote Company in New York City as a marketing research director. His annual salary at that time was $21,000. He had held that position for about three years prior thereto. On October 31, 1962, this department in the company was eliminated, and as a consequence the defendant was unemployed until January 1, 1963. Since the defendant had knowledge of the fact that his position in Flintkote was to be eliminated and his employment terminated, he commenced in July, 1962, to write letters of inquiry to various business enterprises respecting future employment. These letters total seventy-three in number. In December, 1962 (he had been unemployed since October 31, 1962), the defendant had two offers of a position. One was from Tucker, Anthony and Day, an investment brokerage house in New York City, at an annual salary of

$20,000; the other was from MacMillan, Bloedel and Powel River, Ltd., an industrial plant located in Vancouver, British Columbia, in the dominion of Canada, at an annual salary of $24,100 in terms of United States currency, being the equivalent of $26,070.83 in Canadian currency. Acceptance of the latter offer of employment would require him to reside in Canada. The position offered was in an executive capacity.

The defendant discussed both offers of employment with the plaintiff, who expressed the opinion that the Canadian offer was the better of the two offers of employment available to him. It was accepted by him, and he commenced his duties with his new employer on January 1, 1963. What neither of the parties knew at the time the defendant accepted employment in Canada was that the Canadian Income Tax Act levies a 15 percent tax on alimony and support payments made by a Canadian resident to a nonresident former spouse and children of the marriage, and that the tax so imposed is required to be paid by the Canadian resident to the receiver general of Canada on behalf of the non-resident, who receives credit for such payment. See defendant's exhibit, letter of February 13, 1963, from the department of national revenue, taxation division, Canada, to the plaintiff's attorney, Robert M. McAnerney. The effect of the Canadian tax law is that the defendant, as agent of the plaintiff, became obligated on her behalf to pay to the Canadian government a 15 percent tax on all money due from him to the plaintiff for her benefit, alimony and/or support, and that of the children.

For the calendar year of 1963 the defendant was required to remit, and did remit, to Canada the sum of $1425 ( the equivalent of $1601 in Canadian currency). The plaintiff's United States income tax return for 1963 discloses that she had personal

earnings of $706.25 in addition to alimony and support payments received from the defendant. Her income tax for that year to the United States would amount to $905.51 if it was required to be paid by her. However, since she is permitted by agreement between the United States and Canada to credit $1425 in taxes paid to the latter country against the United States tax in the lesser sum of $905.51, the former exceeding the latter by $519.49, there was due from the plaintiff to the United States no income tax for 1963. On the basis of the present income tax levels of both countries, there will continue to be no income tax due from the plaintiff to the United States, at least in the immediate years ahead. In round figures, the imposition of the Canadian income tax has reduced the plaintiff's support and maintenance payments ($792 a month) from $9500 to $8075 a year. As already noted, the plaintiff is not now required to pay any income tax to the United States. The Canadian tax is slightly in excess of $500 over that of the United States, which is canceled in toto.

In their respective briefs, counsel for the parties by charts have outlined various items relating to the financial position of their clients in the light of the defendant's past and present earning power, their personal expenses and obligations, and the operative effect of the judgment of record of April 17, 1962, which is based upon the prior property settlement of March 31, 1962. It should be noted that subsequent thereto, the defendant married and his present wife, as of the date of the hearing on the within motion (April 10, 1964), was expecting a child in the following month. It should also be noted that if the defendant had accepted the position offered him by the Tucker brokerage house in New York City at an annual salary of $20,000, instead of the Canadian position at a higher salary, the plaintiff's annual income for her benefit and that of the children, exclu-

sive of any personal earnings by her, would amount to $8889 as against the $9247 she is presently receiving for her benefit and that of the children as the result of the defendant's present employment, which yields him an annual salary of $24,100 in terms of United States currency or the equivalent of $26,070.84 in Canadian currency. This is so notwithstanding the fact that the tax deductible at the Canadian source is greater than the plaintiff would have had to pay to the United States if the defendant accepted the position in New York City. The salary yield of the latter position would not require the defendant to pay annually $775 into the educational fund as he is now doing because of the larger salary yield of his present employment in Canada, or $397 a year for insurance and dental items as against $289.

In terms of American currency valuation, the court accepts as substantially correct the defendant's present annual financial position which appears in his affidavit of April 10, 1964. This reflects a net income for 1963, after deducting all required payments to the plaintiff and his own tax obligations, as being in the amount of $10,151, and a projected net income for 1964 in the amount of $10,353. As an executive in the Canadian company where he is presently employed, the defendant occupies a position which has attached to it certain social and other obligations which involve an expenditure of money not required of men who have jobs on a lower level of importance. The court accepts as substantially correct the defendant's tabulation therein of personal expenses for himself and his present household as amounting to $11,672 a year in Canadian currency, which is the equivalent of $10,808 a year in American currency.

The court feels that the discussion by the United States Court of Appeals for the District of Columbia

in *Russell* v. *Russell*, 142 F.2d 753 (1944), is pertinent and controlling on the merits of the pending motion now before the court for decision. In that case, the plaintiff was granted a decree of divorce from her husband in 1940. The judgment directed the defendant to pay to the plaintiff $900 a month as alimony and an additional $100 a month for the support of one child of the marriage. This award, totaling $12,000 a year, represented approximately one-half of the defendant's annual income and was made with his voluntary consent. After the decree was entered, the defendant's income increased so that the award then represented about 40 percent of his annual income. So, also, the defendant had again married and in addition to supporting his second wife was also supporting her mother. As a result of the passage of the Revenue Act of 1942, the plaintiff was required to pay an income tax of over $2000 on the alimony award. She petitioned for an order requiring the defendant to pay her annual income tax or to increase her alimony, to enable her to pay the tax. On appeal, the order of the trial court increasing the alimony order to the extent of $100 a month was reversed and the case remanded for further proceedings. This case is referred to in 2A Nelson, Divorce and Annulment (2d Ed.) p. 57, nn. 27, 28.

The importance of the decision in the *Russell* case, supra, in its application to the problem presented in the case at bar lies in the following language (p. 755): "In awarding alimony the limited discretion of the court is based on standards that are necessarily vague. Where the income of the divorced husband is small the problem is less difficult because it only involves giving the wife a decent subsistence if it is possible. We have said that where the husband's income is large the divorced wife is entitled not merely to subsistence but to maintenance in the

manner which the station of life of the parties makes appropriate. Cases where the husband's income permits the alimony award to be higher than average standards of living require present peculiar problems. In such situations the court should not make the award so high as to cause financial difficulties and personal embarrassment on the part of the husband which may impair his earning capacity. Even if a husband with a comparatively large income has wronged his former wife he must, nevertheless, live up to the standards required by his job and enjoy reasonable peace of mind. Otherwise he is not likely to continue to earn that income and the wife herself will be a principal sufferer."

At the time of the entry of the judgment and decree on April 17, 1962, and of the written agreement of the parties on March 31, 1962, it was clearly the intendment of the court and of the parties themselves that all matters relating to custody, alimony, support and disposition of property interests be fully and finally resolved. It was then known that the plaintiff was obliged by law to pay annually an income tax to the United States on moneys so received from the defendant. If the defendant had relinquished a job in this country and took employment in Canada for the purpose of subjecting the plaintiff to a higher income tax deduction imposed by the tax laws of that country, the situation then presented would involve a factual aspect which is totally lacking in the case. It is expressly found that the defendant acted in good faith in accepting his present employment in Canada. The plaintiff does not make any claim to the contrary. Actually the defendant's employment in Canada was a decision in which she played a part. Granting that neither of the parties knew at that time of the income tax laws of Canada which resulted in the plaintiff's being required to have deducted from

moneys paid to her by the defendant a higher tax rate than would have been the situation had the defendant accepted the only other employment available to him after his position with the Flintkote Company terminated on October 31, 1962, she has not been negatively affected to any material extent. Furthermore, the children have been advantaged by an annual extra item of $775 a year which now goes into an educational fund because of the defendant's increased annual salary derived from his present employment as against the lower salary received from Flintkote or which would have been received had he accepted the only other position available to him after October 31, 1962. But apart from these observations, the agreement of the parties themselves on March 31, 1962, was a contract which the court solemnized by its judgment and decree of April 17, 1962. "The law is clear that a contract includes not only what is expressly stated therein but also what is necessarily implied from the language used." *Leventhal* v. *Stratford,* 121 Conn. 290, 295. Since the defendant acted in good faith in accepting employment in Canada, the agreement of the parties on March 31, 1962, warrants by necessary implication the construction that it should be the plaintiff who bears the increased tax burden imposed by the laws of another country if the defendant was in the future to accept employment in such country, and that he should not have assessed against him additional support moneys in view of the agreement so entered into between the parties. This construction is deemed to be controlling in the light of that agreement, and particularly so on the evidence and exhibits before the court for consideration and evaluation.

Further discussion would add nothing of value. All counsel deserve the compliments of the court for their excellent briefs.

The disposition required to be made, and made, is a denial of the plaintiff's motion for modification of the judgment and decree of April 17, 1962. It is so ordered.