[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff sues defendant in breach of contract for defendant's failure to submit shop drawings and to deliver pumps acceptable to engineers of the project of which plaintiff was a subcontractor; defendant counterclaims to recover from plaintiff the price of certain equipment sold to plaintiff; defendant interposes a set-off for other unpaid bills owed by plaintiff; and plaintiff interposes a set-off against defendant's counterclaim.
The facts are as follows: Plaintiff is an electrical contracting company which in 1986 sought to obtain a subcontract from the general contractor, Associated Construction Company (hereinafter Associated), to supply pumps and the pumping control system for a water pollution abatement project in New Haven, Connecticut. The specifications (Section 16910, 2.01 and 2.02) promulgated by Associated for the four raw wastewater pumps were that they were to be 400 horsepower motors, having adjustable speed power drivers with current source converters and power factor correction capacitors. In August 1986 defendant circulated to electrical contractors bidding on the project, including plaintiff, its quote for the adjustable speed drives and process control panels, the drives being controlled by its Accutron 300 controllers, which it specifically stated were adjustable voltage, rather than current source converters, and did not have power correction capacitors.
The plaintiff obtained quotes from other suppliers of the pumps including some in the price range of $300,000 to $400,000. It used defendant's quote in making its bid to Associated for the job. Plaintiff's bid was accepted and a contract with Associated entered into in March 1987. CT Page 87
On May 13, 1987 defendant made a firm quote to plaintiff for four 400 horsepower drives and one process control panel, "per 16910 — section 2.01 and 2.02" for $196,500, but in the technical comments of the quote stated it was "quoting adjustable voltage controller in lieu of current controller. Power correction capacitors are not required in voltage controller design."
Plaintiff's president, Keith Thompson, met several times with defendant's representatives, Ash Sinha and James Serpliss, and was assured by them that defendant's pumps would meet the intent and the performance requirements of the specifications of the project. Relying on their representations, plaintiff submitted to defendant on June 30, 1987 a purchase order for the pumps and control panel at the quoted price. The defendant signed a purchase order, dated July 22, 1987, on its own form to the same effect. Both plaintiff's and defendant's orders provided that defendant agreed to be bound by all the terms and conditions imposed upon plaintiff by project specifications, including Section 16910 thereof. Both orders also contained this language, drafted by plaintiff:
 "This order is contingent upon your [defendant] providing all shop drawings and other engineering details required by said Section [16910] and their acceptance by the architects, engineers, planners and construction supervisors on the above job, CE Maguire, Inc., One Court Street, New Britain, CT."
Over the next several months defendant submitted a series of shop drawings of the equipment referred to in the purchase order. They were all rejected by Mr. Peter Spang, the project engineer in the office of CE Maguire, Inc. Conferences were had by representatives of plaintiff, defendant and the project engineer in which defendant's people endeavored to convince Mr. Spang that its Accutron 300 with adjustable voltage controller and without power correction capacitor could perform equal to or better than the pump require by the project specifications. However, defendant never provided backup technical information and empirical data to substantiate its claim that the voltage source drives would comply with the efficiency standards required in the specifications. The efficiency rating of the drives was crucial because if the drives used excess electricity, the City of New Haven would be assessed an additional charge and penalties by the utility company supplying the electricity to operate the pollution abatement machinery.
After defendant's drawings and submissions as to its CT Page 88 alternative drives had been rejected for the fourth time, Associated demanded that plaintiff supply the equipment required by the specifications or plaintiff would be held in breach of its contract with Associated. Under that threat, in July 1988, plaintiff contracted with another manufacturer to supply the proper equipment. Plaintiff paid $304,475 for the replacement equipment. In this suit it seeks damages of $107,975, being the difference between that price of $304,475 and defendant's quoted price of $196,500.
The essential issue is the terms of the contract between plaintiff and defendant. The plaintiff contends the defendant agreed to provide drives which conformed to the specifications. The defendant contends the purchase order was contingent on defendant supplying shop drawings and engineering data acceptable to the project engineers and when its drawings and data were not accepted, the plaintiff's right to enforce the purchase order ceased.
The terms of a contract are determined first from its language and if that is ambiguous, by the intent of the parties gleaned from all the circumstances of the transaction. Leventhal v. Stratford, 121 Conn. 290, 296 (1936), 2 Williston, Contracts 670, p. 1290. In this case, the purchase order, which constituted the contract between the parties, states as an introduction, before its numbered paragraphs, that "This order is contingent" upon the defendant providing shop drawings and engineering details and their acceptance by the project engineers, CE Maguire, Inc. Whether or not these words created a condition precedent, the nonfulfillment of which excuses performance, "depends upon the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in the light of all the surrounding circumstances when they executed the contract." Lach v. Cahill, 138 Conn. 418,421 (1951). 3 Corbin, Contracts, p. 544.
In the subject provision, the words "This order is contingent upon . . ." reasonably leads to the construction it is a condition precedent to the contract between the parties. Moreover, the circumstances surrounding the purchase order lead to the same conclusion. Defendant had clearly stated in its first communication in August 1986, referring specifically to Section 16910, subsections 2.01 and 2.02 of the specifications, that its Accutron 300 was an adjustable voltage controller and did not have power correction capacitors. In these two particulars the Accutron 300 deviated from the specifications. Both plaintiff and defendant knew this. Plaintiff did not want to be bound to purchase defendant's drives unless they were acceptable to the project engineer. Similarly, defendant knew it had no sale of its drives if they were not so acceptable. CT Page 89 Thus the contingency clause served the interests and expressed the intent of both parties: if the drives were not approved by the project engineers, there was no purchase order and neither party was bound.
The contingency clause implied that defendant would make a reasonable effort to secure the approval of the project engineers. Lach v. Cahill, supra, p. 422.; 3 Corbin Contracts, p. 207. The defendant tried, through its technical submittals, meetings with people involved, and demonstrations with computer mock-ups, to convince the project engineers that its Accutron 300 was equal to or better than the drives required in the specifications, even though it did not supply all the confirming data. The court finds that it made a reasonable effort to secure approval. Moreover, acceptance by the project engineers was a requirement both plaintiff and defendant accepted as necessary to obtain, and even if the project engineers were mistaken as to the efficacy of defendant's Accutron 300, the failure to comply with that requirement made the contract not binding on either the plaintiff or defendant. Dahl v. Edwin Moss Son, Inc., 136 Conn. 147, 153-54 (1949).
With respect to defendant's counterclaim, the parties stipulate that defendant sold and delivered to plaintiff certain switchgear equipment and materials for which plaintiff failed to pay and there is due and owing by plaintiff to defendant $52,095.11. Defendant claims additional unpaid bills owed by plaintiff for engineering services and inspections but has failed to sustain its burden of proof as to them. Plaintiff interposes a set-off of $3,029.10 against defendant's counterclaim for an improperly manufactured bus duct. The court concludes that the plaintiff proved its set-offs and accordingly reduces the amount defendant is entitled to on its counterclaim to $49,066.01.
Judgment may enter for the defendant on plaintiff's complaint and for the defendant on its counterclaim for $49,066.01.
ROBERT SATTER, J.