[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above-captioned case, in which the plaintiff seeks to recover a claimed debt, came before this court on October 1, 1997 for trial on the merits. Post trial reply briefs were to be filed by October 8, 1997.
The plaintiff T.H.P. Associates Limited Partnership ("T.H.P.") alleged in its revised complaint that the defendant Norwich Museum Trust, Inc., ("museum trust") agreed to reimburse it in the amount of $100,000.00 for back real estate taxes T.H.P. paid when it sold certain property on Main Street in Norwich. T.H.P. alleges that the museum trust confirmed in writing its CT Page 10441 agreement to pay the sum but failed to do so after T.H.P. demanded payment.
The museum trust raised no affirmative defenses and denied all allegations of the complaint except the allegation of demand for payment.
After hearing the evidence and examining the exhibits, the court finds the facts to be as follows.
T.H.P. is a limited partnership formed for the purpose of acquiring and developing certain properties in Norwich known as 25-27, 35, 37-41, 43-49, 57, 75 and 87-91 Main Street. T.H.P. bought the properties on September 7, 1989 for two million dollars. At an unspecified time in 1989, T.H.P. entered into an agreement with the City of Norwich to sell the properties to the City for over a million dollars. For reasons not relevant to this suit that agreement was not pursued to a closing T.H.P. renegotiated with the City and agreed to sell the Main Street properties to it for $830,000. The City required T.H.P. to pay accrued real estate taxes in the approximate amount of $100,000. Part of the City's plan in acquiring the properties was to convey 77-85 Main Street to the museum trust, which hoped to develop a heritage museum or some other such tourist attraction on the site as a focus for development in Norwich. T.H.P. was reluctant to sell the property to the City for realized proceeds of only $730,000 (the purchase price reduced by the back taxes). T.H.P.'s lawyer, Thomas Cotter, contacted the directors of the museum trust and asked the museum trust to pay the $100,000 so that T.H.P. would go through with the sale and the museum trust could receive its building. Upon a vote of its executive committee, the museum trust agreed to pay the taxes. Since the museum trust could not do so with funds of its own, one of its directors, Thomas Marien, agreed on its behalf to reimburse T.H.P. for the taxes after T.H.P. paid them.
Edward J. Safdie, the general partner of T.H.P., testified that Marien, who had for many years been Safdie's accountant, made statements that led Safdie to believe that the $100,000 would be paid within six to nine months. Safdie did not, however, testify that this interval was specifically stated as the date for payment in the oral agreement between the parties. Marien Marien testified that he told Safdie that the $100,000 would be paid on the same basis as its plan to pay the City of Norwich for acquisition of the building and for certain windows that had been CT Page 10442 bought from the City to be used in renovation.
T.H.P. entered into evidence the text of a resolution passed by the executive committee of the museum trust on October 11, 1994 and signed by its president. The resolution is as follows:
 Resolution: To agree to reimburse Thames Harbor Plaza the sum of $100,000 for the real estate taxes paid as a result of the sale for the Mercantile Exchange to the City of Norwich. Payment will be made as soon as funds are available.
It is undisputed that "Thames Harbor Plaza" is a reference to T.H.P. Associates Limited Partnership.
The court finds that the text of the above resolution was not provided to Safdie or T.H.P. prior to its sale of the property to the City and that the parties reached no definite agreement as to the date for payment of the $100,000. Safdie knew that the museum trust's assets consisted at the time only of a state grant that could not be used to pay T.H.P. T.H.P.'s expectations that it would be paid within nine months are the product not of any explicit agreement by the museum trust to pay at that time but of Safdie's calculations as to how long he thought development should take.
The two directors of the museums trust who testified, Thomas Marien and Margaret S. Wilson, stated that at the time of the agreement they believed that the steps necessary to renovate the building, rent out retail space, and obtain a mortgage based on the income stream from the retail space would be about two years, and that they expected to pay T.H.P. from the mortgage loan.
The court finds that the parties did not reach any specific agreement as to the time for repayment and that they had differing and unexpressed expectations of when payment would be made. The museum trust has admitted paragraph 3 of the revised complaint, in which T.H.P. alleges that it has made demand for payment. The court finds that none of the $100,000 has been paid to date.
The museum trust has never solicited donations or conducted a fund-raising event. According to the testimony of Margaret Wilson, it did nothing in furtherance of its plans in 1994 or 1995 to try to raise funds. The renovation of the building was substantially completed at the end of 1996. A prospective tenant CT Page 10443 for about one-third of the rental space was found and the museum trust held informal discussions with one bank, the Norwich Savings Society, concerning a mortgage in the amount of $1.5 million, however, these discussions did not ripen to an actual application. William J. Terwilliger, manager of the commercial loan department at Norwich Savings Society, testified that his bank would require less of the rental space to be occupied if the museum trust applied for a mortgage in a lower amount.
The museum trust has not attempted to obtain a mortgage in any amount less than $1.5 million.
ASSIGNMENT
The museum trust presented evidence that it claimed indicated that the obligation at issue had been assigned to another entity, N. Invest L.L.C. The museum trust did not present into evidence any document setting out such an assignment but rather argues that the court should infer such an assignment from certain entries in financial statements of Mr. Safdie and N Invest L.L.C. Those documents contain no actual confirmation of any assignment of the debt of the museum trust, and the court finds that the inferences urged by the defendant are strained and unconvincing.
DUE DATE
The museum trust argues that the parties agreed that the $100,000 would not be due until the museum trust obtained a mortgage that enabled it to pay that amount and that this condition has not yet been satisfied, so that payment is not yet due. This court has found that the agreement of the parties did not include a provision that payment was due upon that or any other specified condition. Even the defendant's own resolution does not mention the obtaining of a mortgage but rather states that "[p]ayment will be made as soon as funds are available." (Ex. F).
Letters sent by the museum trust to Mr. Safdie in 1996 concerning the museum trust's own views on when payment would be made reflect only that party's own intentions, not any actual terms or conditions agreed to by T.H.P. The court finds credible Mr. Safdie's testimony that Mr. Marien stated at the time of the transaction that the museum trust had a number of possible sources of future funds, including grants, donations, and proceeds from loans. CT Page 10444
In its trial brief, the museum trust has cited cases concerning the time for payment when an agreement contains a condition precedent for payment. See Lach v. Cahill,138 Conn. 418, 421 91951); Luttinger v. Rosen, 164 Conn. 45, 47 (1972). This court has found that the agreement at issue did not condition the obligation to pay on a particular event, but thattime to pay was indefinite and premised on the defendant's developing an ability to do so, as in Norton v. Shepard,48 Conn. 141 (1880) (promise to pay "as soon as possible"); Griffin v.Smith, 101 Conn. 219 (1924) (promise to pay when the buyer "could spare the money.")
In Booth v. Booth Bayliss Commercial School, Inc.,120 Conn. 221, 228-29 (1935), the Connecticut Supreme Court undertook an extended analysis of the due date for payment where the agreement is that a party is to "pay when able." The Court rejected precedents that suggested that ability to pay constituted a condition precedent for the obligation but found that payment was not due until the creditor could "prove that the condition has been fulfilled, i.e. that the debtor is able to pay." id. The Court in Booth explained that, despite the prior ruling in Norton v. Shepard, 48 Conn. 141, which had been cited as equating agreement to pay "as soon as possible", with an agreement to pay "within a reasonable time,"
 . . . in order to recover it was necessary, and will be in any future action, that there be found the existence of such a financial situation of the defendant as, under the agreement, entitles the plaintiff to payment . . .
The Court stated that the liability to pay eventuates when there is evidence that an ability to pay exists and that the obligation to pay can be enforced. The Court also stated that once an ability to pay is shown, the promisor cannot avoid the obligation by actions that avoid it becoming able to pay. id.:
 Upon the occurrence of the condition [being able to pay], liability to pay eventuates and is not removed by subsequent changes and developments, and designed prevention of the happening of the condition-as by expenditures made or obligations incurred for that purpose-may excuse the promisee from proving that it has occurred.
Booth v. Booth Nayliss Commercial School, Inc., 120 Conn. 229. CT Page 10445
In Booth, the defendant school had promised to pay the plaintiff teacher "as the financial condition of the corporation permitted." The trial court found that the finances of the defendant did not permit payment and that payment was therefore not yet due and the Supreme Court affirmed; based on the analysis set forth above.
The Court in Booth recognized that an obligor under such circumstances has an obligation "to manage its affairs and conserve its finances with a just regard to the rights of the payee." Booth, 120 Conn. 227-28. This requirement echoes the familiar principle that where a contract is contingent on a particular event, or where it contains a condition precedent, the promisor must use reasonable efforts to bring the condition to fruition. See Phillipe v. Thomas, 3 Conn. App. 471, 473 (1985) (where sale of property is contingent on buyer obtaining a mortgage, there is an implied promise that the buyer will exert reasonable efforts to obtain a mortgage); Luttinger v. Rosen,164 Conn. 45, 47 (1972); Lach v. Cahill, 138 Conn. 418, 422 (1951);Webb v. Moeller, 87 Conn. 138 (1913); Leventhal v. Stratford,121 Conn. 290, 297 (1936).
This court finds that the defendant has failed to make reasonable efforts to raise the money needed to pay the plaintiff. According to Mr. Marien, the museum trust owns a set of prefabricated Anderson windows that have a value of at least fifty thousand dollars that were not installed as part of the renovations and that can apparently be sold. The defendant's only effort to borrow against the value of the building, which has been substantially complete since late 1996, has been a single exploration of the very large loan discussed above. The defendant presented no testimony that it had made any effort at all to obtain a mortgage loan limited to its debt to the plaintiff. Although it has clearly disclosed enough of a plan for a heritage center to attempt to solicit contributions, it has done no fund-raising, and its plans for doing so in the future are very vague.
Where a party has failed to make reasonable efforts to bring about the condition that will trigger its obligation or its time to pay, the party to whom the obligation is owed is entitled to enforcement. Leventhal v. Stratford, 121 Conn. 290 (1930), 3 Williston, Contracts, p. 2369 § 1318. CT Page 10446
This court finds that as of the end of December 1996, when renovations were substantially complete, the defendant had the capacity to raise funds to pay the $100,000 to the plaintiff and that it has breached its acknowledged obligation to repay its obligation by failing to make such efforts. Accordingly, the plaintiff has proven that the defendant has breached its agreement.
CONCLUSION
Judgment shall enter in favor of the plaintiff in the amount of $100,000. Since the due date for payment was uncertain until this adjudication, an award of prejudgment interest is not warranted pursuant to § 37-3a C.G.S. The plaintiff shall recover his court costs and post judgment interest at the rate of eight percent until payment.
BEVERLY J. HODGSON JUDGE OF THE SUPERIOR COURT